STATE OF CONNECTICUT *v.* MELVIN D. BRASWELL
(13902)

Dupont, C. J., and Foti and Healey, Js.

Argued April 2—officially released July 23, 1996

*Kenneth Ian*, certified legal intern, with whom were *Todd D. Fernow* and *Scott D'Angelo*, certified legal intern, for the appellant (defendant).

*Carolyn K. Longstreth*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Paul E. Murray*, senior assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of criminal attempt to sell narcotics in violation of General Statutes §§ 21a-278 (b) and 53a-49 (a),[1] and criminal attempt to

---

[1] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized

convey a controlled drug to an inmate of a correctional institution in violation of General Statutes §§ 53a-174 (a)[2] and 53a-49 (a). The defendant claims that his conviction and sentencing on the charges constituted a violation of his double jeopardy right not to be punished twice for the same offense. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. Sometime in late November, 1992, the state police received information about illegal drug activity occurring in the Hartford Superior Court on Lafayette

in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes § 53a-174 (a) provides: "Any person not authorized by law who conveys or passes, or causes to be conveyed or passed, into any correctional or humane institution or the grounds or buildings thereof, or to any inmate of such an institution who is outside the premises thereof and known to the person so conveying or passing or causing such conveying or passing to be such an inmate, any controlled drug, as defined in section 21a-240, any intoxicating liquors, any firearm, weapon, dangerous instrument or explosive of any kind, any United States currency, or any rope, ladder or other instrument or device for use in making, attempting or aiding an escape, shall be guilty of a class D felony. The unauthorized conveying, passing or possession of any rope or ladder or other instrument or device, adapted for use in making or aiding an escape, into any such institution or the grounds or buildings thereof, shall be presumptive evidence that it was so conveyed, passed or possessed for such use."

Street that involved sheriffs employed at that courthouse. The defendant, Melvin D. Braswell, was employed at that time as a sheriff at that Superior Court location. In conducting their inquiry into the illegal activity, the state police identified the defendant as a potential target for investigation. The source of the state police's information was Gary Ortega, a prisoner at the community correctional center at Hartford. With Ortega's cooperation, the state police formulated a plan to pass "drugs,"[3] via an undercover state police officer, to the defendant with a request that he deliver them to Ortega in the courthouse lockup.

On December 11, 1992, undercover state police officer Regina Rush approached the defendant in the courthouse and asked him to deliver a package to Ortega, who was being held in the courthouse lockup on that day. Rush had a balloon containing inositol, which had two knots at the end and was marked at the top by a black line. The defendant initially hesitated, mentioning the risk to his job, but subsequently agreed to deliver the balloon after Rush offered him $50. When Rush handed the defendant the item, she commented, "It's a little coke."

Ortega was returned to the Hartford community correctional center on December 11, 1992, without having received the balloon. On December 15, 1992, Rush returned to the courthouse to determine why the defendant had not delivered the balloon to Ortega. According to Rush, the defendant stated that Ortega had not been in the lockup on December 11, 1992. The defendant added that he remained in possession of the balloon and inquired whether Rush wanted anything else delivered to Ortega. After the defendant confirmed that Ortega was present in the courthouse lockup on

---

[3] The plan called for the delivery of inositol, a nonnarcotic white powder that resembles cocaine in appearance.

that day, Rush gave the defendant a second marked balloon filled with inositol and $40 in payment. Rush once again told the defendant that the balloon was filled with cocaine. On December 15, 1992, an individual, other than the defendant, delivered the marked balloon to Ortega.[4]

The sole issue on appeal is whether the judgment of conviction and the sentences on the charges constitute multiple punishment for the same offense in violation of the defendant's double jeopardy right.

The double jeopardy clause of the fifth amendment to the United States constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." "This clause prohibits not only multiple trials for the same offense but also multiple punishment for the same offense. *Brown* v. *Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977)." *State* v. *John*, 210 Conn. 652, 693, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989).

This constitutional provision applies to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland*, 395 U.S. 784, 787, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); *State* v. *Woodson*, 227 Conn. 1, 7, 629 A.2d 386 (1993). Although the Connecticut constitution does not include a specific double jeopardy provision, the due process guarantee of article first, § 9, of our state constitution has been held to encompass protection against double jeopardy. *Kohlfuss* v. *Warden*, 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962);

---

[4] Although the defendant was charged with attempted sale of narcotics and attempted delivery of narcotics to an inmate in a correctional facility for the events that transpired on December 15, 1992, the defendant was acquitted of these two charges. This appeal is concerned solely with the events that occurred on December 11, 1992.

see also *State* v. *Anderson*, 211 Conn. 18, 25 n.8, 557 A.2d 917 (1989).

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Greco*, 216 Conn. 282, 290–91, 579 A.2d 84 (1990). In this case, the state concedes, and we agree, that the convictions at issue do not punish separate transactions. The state also acknowledges that the offenses are the "same offense" under a traditional *Blockburger*[5] analysis, in that each offense does not require proof of an element required of the other.

We recognize, however, as does the defendant, that the *Blockburger* test is not a conclusive presumption of law; *Garrett* v. *United States*, 471 U.S. 773, 779, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985); but is a rule of statutory construction and should not be controlling where there is a clear indication of contrary legislative intent. *Missouri* v. *Hunter*, 459 U.S. 359, 367, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983). As a rule of statutory construction, the *Blockburger* test "does no more than create a rebuttable presumption." *State* v. *Delgado*, 19 Conn. App. 245, 251–52, 562 A.2d 539 (1989). The determinative question is whether the legislature intended the offenses to be separate. *State* v. *Smart*, 37 Conn. App. 360, 365, 656 A.2d 677 (1995).

---

[5] *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). The traditional approach to analyzing whether two offenses constitute the same offense was set forth in *Blockburger* as follows: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id., 304.

Although in this case the *Blockburger* test may be satisfied, there remains the question of legislative intent. We are mindful that where the legislative intent is clear from the face of the statute or from legislative history, the *Blockburger* presumption is not controlling. *State* v. *Greco*, supra, 216 Conn. 292. The language, structure and legislative history of a statute can provide evidence of this intent. Id., 293. We conclude that the legislature clearly intended cumulative punishments for both §§ 53a-174 and 21a-278 (b) when the same conduct violates both statutes.

We first look to the purposes of each statute to determine whether the legislature clearly intended multiple punishments for each offense. The charge of unauthorized conveyance of items into a correctional institution, § 53a-174 (a), is a class D felony under the penal code, and its purpose is to protect and enhance the security and integrity of correctional institutions. Items that would tend to disrupt discipline or endanger security are prohibited from being brought into such facilities. The items are not limited to narcotics, but also include alcohol, currency, weapons and tools that may be used to perpetrate an escape.

By contrast, under § 21a-278 (b), the offense of sale of narcotics is an unclassified felony and is located in the dependency producing chapter, designed to address narcotics addiction comprehensively by regulation and punitive measures. It is clearly part of a legislative scheme that is extensive in purpose. The interests intended to be protected by each statute are clearly separate and distinguishable in nature.

Legislative intent to impose cumulative punishments may also be seen through the comments of legislators when enacting § 21a-278 (b). Those comments make it clear that the purpose of the statute was to target and punish, with a mandatory minimum sentence, those

who sell narcotics for profit and are not drug-dependent.[6] We view the prohibition against conveying unauthorized items, such as narcotics, into correctional institutions, under § 53a-174 (a) as entirely distinct.

We also regard the disparate sentencing of the statutes as providing further evidence that the two offenses were not intended as a greater and lesser offense, for purposes of being the same offense. The penalty under § 21a-278 (b) provides for a sentence consisting of a nonsuspendable minimum of five to twenty years while the penalty under § 53a-174 (a), as a class D felony, is a sentence of not less than one nor more than five years which may be suspended.[7]

Our legislature's failure to include a provision expressly prohibiting multiple punishments in the statutes in question further convinces us that the legislature intended the punishments to be aggregated. "Since the legislature has shown that it knows how to bar multiple punishment expressly when it does not intend such punishment"; *State* v. *Greco*, supra, 216 Conn. 295; the absence of similar language in § 53a-174 provides evidence that the legislature intended cumulative punishment with § 21a-278 (b).

Our conclusion as to the legislature's intent is based on the distinct natures of the interests protected by the statutes, their placement within the statutes, their distinct sentencing provisions, the legislative intent of each expressed by legislators at the time of enactment,

---

[6] "The intent of the bill is to give the state's attorney and the prosecuting attorney an opportunity to charge an additional crime which does carry a harder sentence which goes towards imprisoning the person who is not drug dependent and who is, in fact, selling drugs for a profit." 14 H. R. Proc., Pt. 10, 1971 Sess., pp. 4616–17, remarks of Representative Bernard Avcollie.

[7] The state argues that a contrary conclusion would lead to a bizarre result wherein a person selling narcotics to an inmate of a correctional institution would be eligible for a one year suspended sentence, whereas a person selling drugs to the public must serve a minimum of five years.

and the failure of the legislature expressly to prohibit multiple punishment. We conclude, therefore, that the state has rebutted the *Blockburger* test presumption that the defendant was punished twice for two offenses that are the "same" by clear evidence of contrary legislative intent.

The judgment is affirmed.

In this opinion the other judges concurred.