STATE of Wisconsin, Plaintiff-Appellant,

v.

Roger L. WARREN, Defendant-Respondent.†

Court of Appeals

*No. 99–0129–CR. Submitted on briefs June 14, 1999.—Decided June 29, 1999.*

(Also reported in 599 N.W.2d 431.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Marguerite M. Moeller*, assistant attorney general of Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Daniel Snyder* of Park Falls.

Before Cane, C.J., Myse, P.J., and Hoover, J.

CANE, C.J.   We must decide whether charging a defendant with multiple counts of perjury based on testimony given to a circuit judge in the same proceeding violates the rule against multiplicity. The State appeals an order granting Roger Warren's postconviction motion to vacate his perjury conviction on count two of a three-count information.[1] The State argues that the trial court erred when it vacated Warren's perjury conviction and sentence on count two based on multiplicity and double jeopardy concerns because: (1) while counts two and three of the information are identical in law, they are different in fact; and (2) the legislature did not intend that multiple offenses under § 946.31(1)(c), STATS., be brought as a single count.

Applying Wisconsin's well-settled, two-part multiplicity test, *see, e.g., State v. Anderson*, 219 Wis. 2d 740, 747, 580 N.W.2d 329, 332–33 (1998), we conclude that

---

[1] The jury acquitted Warren on the first count of the information.

174

counts two and three are not multiplicitous. Under the multiplicity test's first part, counts two and three of the information are identical in law, but different in fact when we consider the context of the statements upon which the charges are based. Two reasons underlie this initial conclusion. First, while each offense is closely linked, a conviction for each charged offense requires proof of an additional fact that the other does not. *See id.* at 751, 580 N.W.2d at 334. Second, each offense required a "new volitional departure" in Warren's conduct. *See id.* at 751, 580 N.W.2d at 334. Regarding the multiplicity test's second part, we conclude that the legislature intended to permit multiple counts of perjury occurring during the same proceeding. *See id.* at 752, 580 N.W.2d at 335.

Because the two charged offenses are not multiplicitous, we reverse the order vacating Warren's conviction and sentence on count two of the information and remand for reinstatement of the conviction and sentence on that count.

## I. BACKGROUND

A jury convicted Warren of two counts of perjury before a judge, contrary to § 946.31(1)(c), STATS., in connection with testimony Warren gave at the preliminary hearing of David Brown. Warren's testimony incriminated Brown in a bank robbery and potentially qualified Warren for a reward. Thus, an understanding of the charges against Warren requires an explanation of the circumstances surrounding the proceedings against Brown.

In 1997, Warren implicated Brown in a December 10, 1996, armed robbery of the First Federal Bank in Rice Lake. The State subsequently charged Brown with the robbery. At Brown's August 1997 preliminary

hearing, Warren testified as follows. At the end of November 1996, he and Brown traveled to Rice Lake to "check out the bank." Before the December 10 robbery, Warren was arrested for violating a restraining order, was in jail when the robbery occurred, and was therefore unable to participate in the robbery. Shortly after New Year's Day, he helped Brown hide the robbery money in Blue Hills. Based in large part on Warren's testimony incriminating Brown, the circuit court found probable cause to bind Brown over for trial.

Following Brown's preliminary hearing, however, an Ohio inmate confessed to the December 10 robbery. On October 9, 1997, the State charged Warren with three counts of perjury arising from his testimony at Brown's preliminary hearing. Count one of the criminal complaint was expressly based on the following testimony Warren gave at Brown's preliminary hearing:

> Q. Mr. Warren, did you ever have discussions or conversation with the defendant [Brown] regarding robbing a bank?
>
> A. Yeah.

Count two was based on this testimony:

> Q. Did you ever come to Rice Lake with the defendant [Brown]?
>
> A. Yeah.

When this statement is read in the context in which it was made at the preliminary hearing, it is apparent that Warren testified that he initially traveled to Rice Lake with Brown in November to case the bank.

Finally, count three was based on the following series of questions and answers:

176

Q. Did you ever help hide any money from the robbery of Rice Lake?

A. It was up in the Blue Hills.

Q. O.K. Who did you help hide the money?

A. Brown.

Q. Who was it?

A. Dave Brown.

Again, from this statement's context, it is apparent that Warren testified that he helped Brown hide the robbery money in Blue Hills nearly one month after they initially cased the bank.

On October 10, Warren signed a written statement indicating that he "planned the whole story on David Brown for the reward" and that the information he had provided to the officer concerning Brown's involvement was false. The State filed an information on October 20 charging Warren with three counts of perjury, contrary to § 946.31(1)(c), STATS.

Before trial, Warren filed a motion to dismiss counts two and three of the information on multiplicity grounds. The trial court denied the motion but stated that Warren could reassert his motion if the jury convicted him on more than one perjury count.

At the 1998 jury trial on Warren's perjury charges, Warren's testimony from Brown's preliminary hearing was read into the record. At trial, Warren testified consistently with the testimony he gave at Brown's preliminary hearing. Warren stated that he drove to Rice Lake with Brown in November to case the bank, and in January, helped Brown hide the robbery money in Blue Hills. Warren further testified that his October 10 statement recanting his preliminary testimony was

false and that a police officer coerced him to give the statement.

The jury convicted Warren on counts two and three, but acquitted him on count one. Warren then filed a postconviction motion to vacate his conviction and sentence on either counts two or three, arguing that: (1) counts two and three are multiplicitous; and (2) convictions and sentences on both counts violate the double jeopardy clauses of both the state and federal constitutions. The trial court found that count two was subsumed in count three and was multiplicitous; therefore, it granted Warren's motion. The State then appealed the order granting Warren's postconviction motion.

## II. ANALYSIS

No Wisconsin case has squarely addressed a multiplicity challenge to perjury charges arising from statements made during the same court proceeding. Applying well-settled general principles from Wisconsin cases on multiplicity, however, we conclude that the charged offenses are not multiplicitous.

To put the parties' contentions in context, we first set forth the general law on multiplicity. Multiplicity arises when the State charges a defendant in more than one count for a single offense. *See State v. Rabe*, 96 Wis. 2d 48, 61, 291 N.W.2d 809, 815 (1980). Multiplicitous charges are impermissible. *See Anderson*, 219 Wis. 2d at 747, 580 N.W.2d at 332–33. To determine whether charges are multiplicitous, we apply a two-part test. *See State v. Lechner*, 217 Wis. 2d 392, 402–03, 576 N.W.2d 912, 918 (1998). First, we consider whether the charged offenses are identical in law and in fact. *Id.* at 403, 576 N.W.2d at 918. If the charged offenses are

identical in law and fact, they are multiplicitous and thus impermissible because they violate the double jeopardy clauses of the state and federal constitutions.[2] *See id.* at 401 n.5, 576 N.W.2d at 917 n.5. If the charged offenses are different in law or fact, under the test's second part, we decide if the legislature intended to allow multiple convictions for the offenses charged. *State v. Carol M.D.*, 198 Wis. 2d 162, 169, 542 N.W.2d 476, 479 (Ct. App. 1995). If we conclude that the legislature intended that the charges be brought as a single count, the charges are multiplicitous, not because they violate double jeopardy, but because they violate legislative intent. *See Anderson*, 219 Wis. 2d at 753, 580 N.W.2d at 335. We apply different tests to each prong, which we address in turn.

## 1. Prong One: Different in Law and Fact

The State does not dispute that the perjury offenses are identical in law. Given that fact concession, we address only whether the offenses are different in fact.[3] *See State v. Sauceda*, 168 Wis. 2d 486, 492, 495, 485 N.W.2d 1, 3, 5 (1992).

This appeal presents a "continuous offense challenge," one in which multiple charges are brought under the same statutory section, § 946.31(1)(c), STATS.

---

[2] Both the United States and Wisconsin Constitutions protect a criminal defendant against being twice placed in jeopardy for the same offense. *See* U.S. CONST. amend. V; WIS. CONST. art. I, § 8. Only the first prong of the multiplicity analysis triggers double jeopardy concerns. *See State v. Anderson*, 219 Wis. 2d 740, 753, 580 N.W.2d 329, 335 (1998).

[3] Warren's offenses are indeed identical in law because they constitute multiple violations of the same statute, § 946.31 (1)(c), STATS. *See State v. Carol M.D.*, 198 Wis. 2d 162, 170, 542 N.W.2d 476, 479 (Ct. App. 1995).

*See Anderson*, 219 Wis. 2d at 748, 580 N.W.2d at 333. When we apply the multiplicity test's first part to a continuous offense challenge, we focus on the facts giving rise to the charged offenses and ask if the offenses are either separated in time *or* significantly different in nature. [4] *See id.* at 749, 580 N.W.2d at 333.

■

To determine if the charged offenses are separated in time, we consider whether there is a "sufficient break" in the defendant's conduct to constitute more than one offense. *See Lechner*, 217 Wis. 2d at 414–16, 576 N.W.2d at 923–24 (analyzing *Rabe*). The test for whether the offenses are significantly different in nature is whether a conviction for each offense requires proof of an additional fact that a conviction for the other offense does not. *See Anderson*, 219 Wis. 2d at 751, 580 N.W.2d at 334 (citing *Rabe*, 96 Wis. 2d at 63, 291 N.W.2d at 816). Offenses are also significantly different in nature if each requires a " 'new volitional departure in the defendant's course of conduct.' " *Anderson*, 219 Wis. 2d at 751, 580 N.W.2d at 334 (quoting *State v. Eisch*, 96 Wis. 2d 25, 36, 291 N.W.2d 800, 805 (1980)). If we conclude that the offenses are significantly different in nature, we need not address whether Warren's statements are separated in time. *See Anderson*, 219 N.W.2d at 751, 580 N.W.2d at 334.

The State argues that the perjury counts of which Warren was convicted (counts two and three) are different in fact because a conviction on count two

---

[4] By contrast, in a "lesser-included offense challenge" in which multiple charges are brought under different statutory sections, the factual situations underlying the offenses are identical. *See Anderson*, 219 Wis. 2d at 748, 580 N.W.2d at 333. Our focus in a lesser-included offense challenge therefore switches to whether the offenses are identical in law. *See id.*

required proof of several facts which count three did not "and vice versa." To convict on count two, the State explains, the jury had to conclude that Warren's statement about traveling to Rice Lake with Brown in November was false when made, that Warren did not believe the statement was true when made, and that the false statement was material to the proceeding.[5] To convict Warren on count three, the jury had to find a different statement of Warren's, that he helped Brown hide the money in Blue Hills in January, was false when made, material to the proceeding, and that Warren did not believe the statement was true when he made it. Additionally, the State argues that the offenses are different in nature because the making of each false material statement required "a new volitional departure in the defendant's course of conduct." *Anderson*, 219 Wis. 2d at 751, 580 N.W.2d at 334.

Warren focuses on the language the State chose for count two of the information. Arguing that count two's language is too broad to be regarded as separate and distinct from count three because the context of Warren's statements is not apparent in the information, Warren responds that counts two and three are neither significantly separated in time nor different in nature. We agree with the State and hold that the charged offenses are different in fact.

---

[5] The elements of perjury before a judge are: (1) the defendant orally make a statement while under oath; (2) the statement was false when made; (3) the defendant did not believe the statement to be true when made; (4) the statement was made in a proceeding before a court; and (5) the statement was material to the proceeding. *See State v. Munz*, 198 Wis. 2d 379, 382, 541 N.W.2d 821, 822 (Ct. App. 1995); *see also* WIS J I—CRIMINAL 1750.

As mentioned previously, count two charges Warren with making false assertions to the judge at Brown's preliminary hearing by responding affirmatively to the State's question, "Did you ever come to Rice Lake with the defendant [Brown]?" According to Warren's testimony at Brown's preliminary hearing, which was read to the jury at trial, the context of this statement is that Warren made a false material statement to the judge that he and Brown traveled to Rice Lake in November specifically to case the bank. To prove that this was a false material statement, the State had to prove that Brown never traveled to Rice Lake with Brown before the robbery to case the bank. By contrast, the context of count three's charge is that shortly after New Year's Day, he helped Brown hide the robbery money in Blue Hills. Thus, count three charges Warren with making a false material statement about concealing the robbery's proceeds about one month after he traveled to Rice Lake to case the bank. To prove that this was a false material statement, the State had to prove that Warren never helped Brown hide the money.

Although these counts are related and arise out of the same transaction, i.e., Warren's testimony at Brown's preliminary hearing, the counts are still different in nature because when Warren's responses are viewed in the context in which they were made, different evidence is required to establish that Warren responded falsely to the questions upon which counts two and three are based. *See Anderson*, 219 Wis. 2d at 751, 580 N.W.2d at 334. The first false statement was about casing the bank before the robbery, and the second false statement was about hiding the money after the robbery. As the State points out, Warren could have been lying when he testified that he traveled to Rice

Lake with Brown in November to case the bank, but telling the truth when he testified that he helped Brown hide the money from the robbery in January in Blue Hills. Put another way, Warren could have traveled to Rice Lake to help Brown case the bank, but not helped him hide the money. Or, as in this case, Warren could have lied about both traveling to Rice Lake to case the bank and later hiding the money from the robbery; that he made two false statements about the same robbery does not render the charged offenses identical in fact.

The offenses are also different in nature, and therefore different in fact, because each false statement required a new volitional departure in Warren's course of conduct at Brown's preliminary hearing. *See id.* Warren first made a conscious decision to lie about traveling to Rice Lake to case the bank and subsequently made a separate conscious decision to lie about helping Brown hide the money. For these reasons, while the charges are identical in law, they are indeed different in fact and therefore not multiplicitous in violation of the double jeopardy clause. *See, e.g., Sauceda,* 168 Wis. 2d at 495, 485 N.W.2d at 5.

Federal law on multiplicity challenges to perjury charges bolsters our conclusion. While federal cases do not use the phrase "different in nature," the federal test for multiplicity in perjury cases is markedly similar to the different in nature test Wisconsin applies to all multiplicity challenges. *Compare United States v. Molinares,* 700 F.2d 647, 653 (11th Cir. 1983), *with Anderson,* 219 Wis. 2d at 747, 580 N.W.2d at 332–33.

Under federal law, separate and distinct false declarations in trial testimony that require different factual proof of falsity may properly be charged in separate counts, even if they are all related and arise out of

the same transaction or subject matter. *Molinares*, 700 F.2d at 653 (citing *United States v. De La Torre*, 634 F.2d 792, 795 (5th Cir. 1981)); *accord United States v. Graham*, 60 F.3d 463, 467 (8th Cir. 1995) (Separate false statements may be charged in separate perjury counts if they require different factual proof of their falsehood, even if they are related to a common nexus of fact.); *United States v. Harrelson*, 754 F.2d 1182, 1184 (5th Cir. 1985) (indictment for perjury not multiplicitous when it contains charges for "separate and distinct false declarations . . . [even if] they are all related and arise out of the same transaction or subject matter"); *United States v. Coiro*, 785 F. Supp. 326, 331–32 (E.D. N.Y. 1992) (denial of subject matter of conversation before grand jury different in fact from denial of a promise made during that same conversation, so alleged falsehoods properly charged as separate counts).

Thus, as long as different facts are required to establish that a defendant's various responses were false, multiple counts are not multiplicitous but are "technically sound." *See Molinares*, 700 F.2d at 653. As discussed above, different evidence is required to establish that Warren's responses at Brown's preliminary hearing were false. While these falsehoods are closely linked, they are more indicative of a systematic attempt to mislead the judge rather than any multiplicity in charging Warren. *See id.*

## 2. Prong Two: Legislative Intent

Because we conclude that Warren's charged offenses are different in fact, we next turn to legislative intent. *See Lechner*, 217 Wis. 2d at 416, 576 N.W.2d at 924. Charging multiple counts, even if different in fact and therefore not violative of double jeopardy, may still

be multiplicitous if the legislature intended that multiple offenses under § 946.31(1)(c), STATS., be brought as a single count or as a single "unit of prosecution." *See Anderson*, 219 Wis. 2d at 752–53, 580 N.W.2d at 335; *Rabe*, 96 Wis. 2d at 69, 291 N.W.2d at 819. When the charged offenses are different in fact, as here, we must presume that the legislature intended to permit cumulative punishments. *Sauceda*, 168 Wis. 2d at 496, 485 N.W.2d at 5. Only a clear indication of legislative intent to the contrary will overcome this presumption. *State v. Kuntz*, 160 Wis. 2d 722, 756, 467 N.W.2d 531, 545 (1991).

The multiplicity test's second part is solely a question of statutory construction. *See Carol M.D.*, 198 Wis. 2d at 169 n.3, 542 N.W.2d at 479 n.3. Statutory construction is a question of law we review de novo. *See State v. Grayson*, 172 Wis. 2d 156, 160, 493 N.W.2d 23, 25–26 (1992). Section 946.31(1)(c), STATS., provides:

> Whoever under oath or affirmation orally makes a false material statement which the person does not believe to be true, in any matter, cause, action or proceeding, before any of the following, . . . is guilty of a Class D felony:
>
> . . . .
>
> (c)  A judge, referee or court commissioner.

This statute does not expressly indicate whether the legislature intended multiple offenses to be brought as a single count. In a multiplicity analysis when the legislature's intent is not expressly indicated, we consider four factors to ascertain legislative intent: (1) the statutory language; (2) the legislative history and context; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment. *Anderson*, 219 Wis. 2d at 752–53, 580 N.W.2d at 335

(discussing *Grayson*, 172 Wis. 2d at 160, 493 N.W.2d at 25–26); *see also State v. Hubbard*, 206 Wis. 2d 651, 659, 558 N.W.2d 126, 130 (Ct. App. 1996) (discussing and applying the four factors). A "common-sense" view of the statute as a whole guides our application of these four factors, and we seek a result that is "reasonable and fair to offenders and society." *Anderson*, 219 Wis. 2d at 753, 580 N.W.2d at 335.

██

According to the State, no factors indicate that the legislature intended that only a single perjury count be charged for different false statements made at the same preliminary hearing. Focusing his discussion on what he construes as the legislatively protected interest involved, Warren asserts that there is no indication that the legislature intended multiple punishments. We agree with the State that an analysis of the four factors fails to overcome the presumption that the legislature intended to permit cumulative punishments.

The first factor, statutory language, does not indicate a contrary intent. Section 946.31(1)(c), STATS., proscribes the making of a "false material statement" and requires proof that each false statement is material to the proceeding. This language does not rebut the presumption that the legislature intended to punish the making of individual false statements and not a continuous course of conduct. If anything, it suggests that each false material statement, if different in fact, is punishable as a separate count. While the State does not address the second factor, nothing in the statute's history and context rebuts the presumption that the statute contemplates multiple counts.

Likewise, the nature of the proscribed conduct does not suggest that the legislature intended one unit of prosecution. An analysis of this third factor requires

186

essentially the same analysis as whether the offenses are different in fact under the multiplicity test's first prong. *See, e.g., Grayson*, 172 Wis. 2d at 165, 493 N.W.2d at 28; *Anderson*, 219 Wis. 2d at 753–54, 580 N.W.2d at 335; *Eisch*, 96 Wis. 2d at 31–32, 291 N.W.2d at 803–04. As discussed above, the offenses are significantly different in nature because each requires proof of an additional fact that the other does not and because each offense required a separate volitional act on Warren's part. Because the nature of the different proscribed conduct is different in fact, we perceive no clear indication under this factor to overcome the presumption that the legislature intended cumulative punishments. *See Anderson*, 219 Wis. 2d at 757, 580 N.W.2d at 336.

Finally, multiple punishment under § 946.31(1)(c), STATS., is consistent with the need to deter witnesses in court proceedings from making multiple false statements. To hold otherwise would allow a witness to make multiple false material statements and only be subjected to one perjury count. If a person in Warren's situation could be prosecuted only once for multiple false statements made during a single proceeding, the witness would have no incentive to tell the truth after making his or her first false material statement. Given Warren's conscious decision to make two separate false statements, it would be inappropriate to allow only a single count and thereby immunize Warren from prosecution for multiple false statements.

We conclude that an examination of these factors does not overcome the presumption that the legislature intended cumulative punishments for violations of § 946.31(1)(c), STATS., during the same proceeding. Therefore, we reverse the order vacating Warren's conviction and sentence on count two of the information

and remand for reinstatement of the conviction and sentence on that count.

*By the Court.*—Order reversed and cause remanded with directions.