STATE OF CONNECTICUT *v.* JAMES SERVELLO
(AC 22759)

Lavery, C. J., and Bishop and Mihalakos, Js.

Argued September 8—officially released December 2, 2003

*William B. Westcott,* for the appellant (defendant).

*Denise B. Smoker,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Rosita M. Creamer,* senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, James Servello, appeals from the judgment of conviction, rendered after a jury trial, of three counts of perjury in violation of General

Statutes § 53a-156, one count of forgery in the second degree in violation of General Statutes § 53a-139[1] and one count of fabricating physical evidence in violation of General Statutes § 53a-155.[2] On appeal, the defendant claims that (1) there was insufficient evidence to support his conviction on the first count of perjury, (2) his conviction of forgery in the second degree and fabricating physical evidence violates constitutional prohibitions against double jeopardy, and (3) his conviction of three counts of perjury violates constitutional prohibitions against double jeopardy. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On September 1, 1992, the defendant pleaded guilty under the *Alford*[3] doctrine to one count of arson in the third degree in violation of General Statutes § 53a-113 (a) and one count of criminal mischief in the first degree in violation of General Statutes § 53a-115 (a) (1). On October 16, 1992, he was sentenced to twelve

---

[1] General Statutes § 53a-139 (a) provides in relevant part: "A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument or issues or possesses any written instrument which he knows to be forged, which is or purports to be, or which is calculated to become or represent if completed: (1) A deed, will, codicil, contract, assignment, commercial instrument or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status . . . ."

[2] General Statutes § 53a-155 (a) provides: "A person is guilty of tampering with or fabricating physical evidence if, believing that an official proceeding is pending, or about to be instituted, he: (1) Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding; or (2) makes, presents or uses any record, document or thing knowing it to be false and with purpose to mislead a public servant who is or may be engaged in such official proceeding."

[3] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt, but consents to being punished as if he were guilty to avoid the risk of proceeding to trial." (Internal quotation marks omitted.) *State* v. *Daniels*, 248 Conn. 64, 66–67 n.2, 726 A.2d 520 (1999).

years imprisonment under the terms of a plea agreement.

The defendant later filed a petition for a writ of habeas corpus, challenging his sentence and plea agreement. Specifically, the defendant alleged that the terms of his plea agreement were different from the terms to which he had agreed with his attorney. The defendant claimed that he was to plead guilty to the reduced charge of reckless burning in violation of General Statutes § 53a-114 and criminal mischief in the second degree in violation of General Statutes § 53a-116, and be sentenced to six years imprisonment, execution suspended after four years.

On September 23, 1997, a hearing was held on the defendant's habeas petition. There, the defendant testified that (1) prior to his plea and sentencing, his then attorney, Patrick Wall, told him that in exchange for pleading guilty to charges of reckless burning and criminal mischief in the second degree, he would receive a sentence of six years, suspended after four years; (2) on August 31, 1992, at the Litchfield Superior Court, Wall handed him a letter that memorialized the plea agreement; and (3) on September 1, 1992, during his guilty pleas, as the courtroom clerk read different charges and a longer proposed sentence than he had earlier discussed with his counsel, he protested to his attorney, who told him not to be concerned because the agreement with the state for lesser charges and a lesser sentence was still intact. Additionally, the defendant claimed that attorney Wall had told him how to respond to the judge's questions. At the habeas hearing, the defendant also placed in evidence a letter allegedly written by Wall, describing the plea agreement and sentence that he was to receive.

On September 18, 2001, in connection with the defendant's habeas testimony, the state charged the defen-

dant with three counts of perjury, one count of forgery in the second degree and one count of fabricating evidence. The defendant's trial commenced on October 9, 2001. At trial, Wall testified that on September 1, 1992, he had extensive discussions with assistant state's attorney David Shepack and the defendant regarding a possible plea arrangement to dispose of the charges against the defendant. Wall stated that all the parties had reached an agreement that the defendant would plead guilty to arson in the third degree and criminal mischief in the first degree for which he would receive an effective sentence of twelve years imprisonment. Wall further testified that in the plea discussions, neither the charge of reckless burning nor that of criminal mischief in the second degree was ever mentioned. He also denied writing the August 31, 1992 letter that the defendant used in his habeas proceeding. Additionally, Wall testified that at no point during the plea canvass on September 1, 1992, did the defendant protest the charges recited by the courtroom clerk or the proposed sentence.

Connie Favuzza, Wall's secretary, testified that neither she nor anyone else in Wall's office produced the August 31, 1992 letter. She explained that all letters from Wall's office on letterhead were written on bond paper whereas the August 31, 1992 letter, although on letterhead, was printed on plain copy paper. She also noted that both the typeface and the format of that letter were inconsistent with the typeface and format used by Wall's office.

Shepack testified as to the September 1, 1992 plea negotiations with Wall. He stated that he never offered to reduce the charges against the defendant to reckless burning and criminal mischief in the second degree, and that he had been unwilling to reduce the defendant's proposed period of incarceration to a term of less than twelve years. Last, Shepack testified that he watched

the defendant during the plea canvass and did not see him turn to his attorney to question either the charges or the sentence that was being proposed. On October 15, 2001, the jury returned a verdict of guilty on all three counts of perjury, one count of forgery in the second degree and one count of fabricating physical evidence. Thereafter, on January 18, 2002, the defendant was sentenced to a total effective term of fifteen years incarceration to serve and twenty years special parole.

I

The defendant first claims that there was insufficient evidence before the jury to sustain his conviction on the first count of perjury. Specifically, the defendant argues that there was insufficient evidence to corroborate the element of falsity. We disagree.

The standard of review we apply to a claim of insufficient evidence is well established. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Newsome*, 238 Conn. 588, 616, 682 A.2d 972 (1996).

"In reviewing the sufficiency of the evidence in a case involving a conviction for perjury . . . there is an additional inquiry: whether the evidence is sufficient to satisfy the requirements of the so-called one-witness-plus-corroboration rule. . . . Under this rule, a perjury conviction cannot be based solely upon the testimony of a single witness; it must also be based on corroborative evidence that tends to establish the falsity of the statement, independently of the princip[al] evidence that

it corroborates." (Citation omitted; internal quotation marks omitted.) *State* v. *Meehan*, 260 Conn. 372, 386, 796 A.2d 1191 (2002).

Viewed in the light most favorable to the state, we conclude that there was ample evidence to support the conviction on the first count of perjury. The state charged the defendant in count one of the information with having committed perjury at the habeas hearing by testifying that Wall had informed him in 1992 that he would be sentenced to six years incarceration, suspended after four years, on the charges of reckless burning and criminal mischief in the second degree. As proof of the element of falsity, Wall testified that he never told the defendant that he could plead to the lesser charge. Wall also testified that a lesser charge was never discussed during the plea negotiations. To corroborate that evidence, Shepack testified that he and Wall had never discussed a plea to reckless burning or criminal mischief in the second degree. Additionally, Shepack stated that he had never considered offering the defendant a prison term of less than twelve years. That evidence was sufficient to corroborate Wall's testimony that the defendant's testimony was false.

The defendant's argument that Wall's testimony could be corroborated only by direct evidence reflects a misunderstanding of the "one witness plus corroboration rule." Although "[t]he purpose of the rule [is] to prevent ill-founded retaliatory attack by perjury prosecution upon a witness on no more than the contrary oath of another"; (internal quotation marks omitted) *State* v. *Sanchez*, 204 Conn. 472, 478, 528 A.2d 373 (1987); our case law does not require the kind of direct evidence that the defendant argues is necessary. See *State* v. *Meehan*, supra, 260 Conn. 387–88.[4] Circumstantial evi-

---

[4] In *Meehan*, the defendant, then a police officer, was charged with having committed perjury after he testified to a grand jury that he had not used drugs during his time with the police department. To prove the charge of falsity, the state introduced testimony by a witness that the defendant

dence is sufficient to corroborate the element of falsity in perjury. Id. On that record, the jury reasonably could have found Shepack's testimony corroborative of Wall's testimony. Accordingly, the defendant's first claim must fail.

## II

We next turn to the defendant's claim that his conviction of forgery in the second degree and fabricating physical evidence violates the prohibition against double jeopardy. The defendant claims that his conviction of both those offenses arose out of the same transaction or occurrence and constituted double punishment for the same offense. We disagree.

Because the defendant's claim presents an issue of law, our review is plenary. See *State* v. *Butler*, 262 Conn. 167, 174, 810 A.2d 791 (2002). Although the defendant did not preserve his claim for appellate review, we find that it is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as the record is adequate for review, and the claim is of constitutional magnitude and of a nature that has been found to meet the *Golding* requirements automatically. See *State* v. *Cotton*, 77 Conn. App. 749, 764, 825 A.2d 189, cert. denied, 265 Conn. 911, 831 A.2d 251 (2003). The claim, however, fails to satisfy the third prong of *Golding* because no double jeopardy violation occurred.[5]

---

approached him three times to buy drugs. Our Supreme Court held that testimony by another police officer that he found a small plastic bag typically used to carry drugs in the bathroom immediately after the defendant left was sufficient to corroborate the other witness' testimony. *State* v. *Meehan*, supra, 260 Conn. 387.

[5] Under *Golding*, "[a] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quota-

"The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . . This constitutional provision is applicable to the states through the due process clause of the fourteenth amendment." (Internal quotation marks omitted.) *State* v. *Sanchez*, 75 Conn. App. 223, 232, 815 A.2d 242, cert. denied, 263 Conn. 914, 821 A.2d 769 (2003). "[Our Supreme Court has] also held that the due process guarantees of article first, § 9, of the Connecticut constitution include protection against double jeopardy." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 74 Conn. App. 580, 595, 814 A.2d 384, cert. denied, 263 Conn. 915, 821 A.2d 771 (2003).

"In the context of a single trial, the double jeopardy analysis is a two part process. . . . First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. . . . [T]he role of the constitutional guarantee [against double jeopardy] is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense. . . . The issue, though essentially constitutional, becomes one of statutory construction." (Internal quotation marks omitted.) *State* v. *Perez*, 78 Conn. App. 610, 639, 828 A.2d 626 (2003).

Because it is undisputed that the charges arose out of the same act, we direct our inquiry to whether the charged crimes constitute the same offense. "The traditional test for determining whether two offenses are the same offense for double jeopardy purposes was set forth in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). [W]here the same act

tion marks omitted.) *State* v. *Vasquez*, 66 Conn. App. 118, 123, 783 A.2d 1183, cert. denied, 258 Conn. 941, 786 A.2d 428 (2001).

or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . In conducting this inquiry, we look only to the relevant statutes, the information, and the bill of particulars, not to the evidence presented at trial." (Internal quotation marks omitted.) *State* v. *Cotton*, supra, 77 Conn. App. 765.

In this instance, we conclude that the two offenses constitute the "same offense" under a *Blockburger* analysis because only one of the offenses requires proof of an additional fact that the other does not.[6] *State* v. *Otto*, 50 Conn. App. 1, 19, 717 A.2d 775, cert. denied, 247 Conn. 927, 719 A.2d 1171 (1998). "Our analysis of double jeopardy claims does not end, however, with a comparison of the offenses. The *Blockburger* test is a rule of statutory construction, and because it serves as a means of discerning [legislative] purpose the rule should not be controlling where . . . there is a clear indication of contrary legislative intent." (Internal quotation marks omitted.) *State* v. *Perez*, supra, 78 Conn. App. 641. "The determinative question is whether the legislature intended the offenses to be separate." *State* v. *Braswell*, 42 Conn. App. 264, 269, 679 A.2d 407 (1996), appeal dismissed, 243 Conn. 248, 701 A.2d 1057 (1997).

To answer that question, we first look to the language of each statute to determine if the legislature intended multiple punishments for each offense. See *State* v. *Perez*, supra, 78 Conn. App. 642. The clear language of the statutes does not indicate an express intent by our legislature that a person convicted of forgery in the

---

[6] Fabricating evidence requires that the defendant believe that an official proceeding is pending. We cannot conceive of a situation in which the defendant could alter a document with the intent to mislead a public servant and not also commit the crime of forgery in the second degree. See General Statutes §§ 53a-139, 53a-155.

second degree could not also be convicted of fabricating evidence for the same act. "Since the legislature has shown that it knows how to bar multiple punishments expressly when it does not intend such punishment"; *State* v. *Greco*, 216 Conn. 282, 295, 579 A.2d 84 (1990); the absence of similar language in those statutes provides evidence that the legislature intended cumulative punishments. See, e.g., *State* v. *Perez*, supra, 642 (noting numerous statutes in which legislature forbade multiple punishments for same transaction).

To further guide our inquiry, we next turn to the purpose of each statute. *State* v. *Braswell*, supra, 42 Conn. App. 270. The statute making criminal the fabricating of evidence is found in part XI of our Penal Code, which addresses offenses against the administration of justice. Statutes found in that section address crimes that effect a fraud or harm to the court.[7] The purpose of those statutes is to punish those who interfere with the courts and our system of justice.

The statute making criminal the act of forgery, on the other hand, is found in part X of our Penal Code, which addresses forgery and related offenses. Statutes in that section address forgery in varying degrees as well as criminal simulation and the unlawful use of slugs. The purpose of those statutes is to prevent individuals from benefiting from fraud. Those statutes do not address fraud on the courts; therefore the interests to be protected by each statute are separate and distinguishable.

Furthermore, nothing in the legislative history surrounding the enactment of forgery or fabricating evidence reveals that our legislature intended a result different from the one we reach today. There was no discussion by our legislature that multiple punishments

---

[7] See, e.g., General Statutes §§ 53a-147, bribery; 53a-151, tampering with a witness; 53a-152, bribery of a juror.

for forgery in the second degree or fabricating evidence were impermissible. Our Supreme Court has stated that when the legislature is silent, we will not infer legislative intent. *State* v. *Kirsch*, 263 Conn. 390, 420, 820 A.2d 236 (2003).

Upon review of the statutory language, the purpose of the two statutes and the legislative history, we conclude that forgery in the second degree and fabricating evidence are not the "same offense" for double jeopardy purposes. Accordingly, the defendant's double jeopardy rights were not violated by his simultaneous prosecution for fabricating evidence and forgery, which arose from the same acts.

### III

Last, we turn to the defendant's unpreserved claim that his conviction of three counts of perjury violated the prohibition against double jeopardy. Although we find that his claim is reviewable under *Golding*,[8] the defendant's claim fails to satisfy the third prong of *Golding*, as there was no double jeopardy violation.

The defendant argues that his conviction of three counts of perjury resulted from a single act of perjury and, thus, constituted multiple punishments for the same crime in violation of the double jeopardy clause of the fifth amendment. Specifically, he alleges that his testimony constituted only one continuous lie, which the state unreasonably parsed into three distinct acts of perjury. That claim lacks merit.

This court has held that "distinct repetitions of a prohibited act, however closely they may follow each other . . . may be punished as separate crimes without offending the double jeopardy clause. . . . The same transaction, in other words; may constitute separate and distinct crimes where it is susceptible of separation

---

[8] See part II.

into parts, each of which in itself constitutes a completed offense. . . . [T]he test is not whether the criminal intent is one and the same and inspiring the whole transaction, but whether separate acts have been committed with the requisite criminal intent and are such as are made punishable by the [statute]." (Internal quotation marks omitted.) *State* v. *Cotton*, supra, 77 Conn. App. 766. Applying that test to the record at hand, the evidence supports the conclusion that the defendant committed three separate and distinct acts of perjury during his testimony in the habeas hearing.

Pursuant to § 53a-156, to convict the defendant of perjury, the state had the burden to prove beyond a reasonable doubt that in an official proceeding, under oath, the defendant testified falsely to a material statement that he did not believe to be true. Furthermore, not only did the state have to prove the defendant's statements to be false, but the state also had to corroborate any testimony used to establish the falsity of the defendant's statement. See *State* v. *Meehan*, supra, 260 Conn. 386.

A review of the information indicates that the charges arose from three separate false statements. Count one arose from the defendant's testimony regarding an alleged conversation between himself and Wall in the Litchfield Superior Court lockup; count two arose from the defendant's testimony that he had received a letter from Wall on August 31, 1991, describing a plea arrangement involving reduced charges and a lesser sentence; and count three arose from the defendant's testimony regarding an alleged conversation he had with Wall during the plea canvass. The testimony in support of the perjury counts revealed that the defendant did not merely reiterate the same false statement multiple times, but rather, he made three false statements involving different occurrences, and the state had to prove

each of the defendant's statements false by proof specific to each statement.

Furthermore, although we have no Connecticut decisional guidance directly on point, case law from other jurisdictions is instructive. Under federal law, separate and distinct false declarations in trial testimony properly may be charged in separate counts if they require different factual proof of falsity, even if they are all related and arise out of the same transaction or subject matter. See, e.g., *United States* v. *Harrelson*, 754 F.2d 1182, 1184 (5th Cir. 1985) (indictment for perjury not multiplicitous when it contains charges for " '[s]eparate and distinct false declarations [even if] they are all related and arise out of the same transaction or subject matter' "); *United State* v. *Molinares*, 700 F.2d 647, 653 (11th Cir. 1983). Courts in several states also have reached the same conclusion. See, e.g., *Commonwealth* v. *Gurney*, 13 Mass. App. 391, 397, 433 N.E.2d 471 (1982); *Matter of Di Lorenzo* v. *Murtagh*, 36 N.Y.2d 306, 310–11, 327 N.E.2d 805, 367 N.Y.S.2d 761 (1975); *State* v. *Warren*, 229 Wis. 2d 172, 183–84, 599 N.W.2d 431 (Wis. App.), review denied, 228 Wis. 2d 176, 602 N.W.2d 762 (Wis. 1999).

We conclude that when each false sworn statement requires its own proof of falsity involving facts unique to that particular statement, a defendant may be convicted of multiple counts of perjury arising from testimony regarding the same general subject without violating the prohibition against double jeopardy. Accordingly, the defendant's final claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.