IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JERRY HICKMAN, | § | |
| | § | No. 89, 2017 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. S1510010166 |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: April 18, 2018
Decided: May 2, 2018

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## ORDER

This 2nd day of May, 2018, having considered the briefs and the record below, it appears to the Court that:

(1)     A Superior Court jury convicted Jerry Hickman of felony theft, securities fraud, sale of unregistered securities, and forgery. The convictions arose out of Hickman's solicitation of investors for a failed start-up corporation. Hickman appeals only his forgery convictions, claiming that the State improperly turned single counts of forgery into multiple counts, which allegedly violated the multiplicity doctrine of the Double Jeopardy Clause. After a careful review, we find no plain error in the State's charge of multiple counts of forgery and affirm.

(2) In 2007, Hickman founded 911 Locator Systems, Inc., to develop a strobe light installed at the end of a driveway that would automatically turn on when a 911 call was placed from that location. To fund the start-up, Hickman offered and sold unregistered securities to investors and obtained loans. During fundraising, Hickman sent documents by email to investors and lenders representing that the company was profitable and growing.

(3) In June 2015 an investor became suspicious about the accuracy of the representations being made, and filed a complaint with the Delaware Department of Securities Regulation. The State's Department of Justice Investor Protection Unit conducted an investigation that revealed that Hickman emailed to investors and lenders altered monthly bank statements and annual tax records, which portrayed the corporation as much more profitable than it was.[1] Specifically, Hickman sent two investors seven altered corporate tax returns for 2007 through 2013 that showed substantial profits, income, and activity, despite the reality that the company had little to no activity of the kind.[2] In an e-mail to Ironwood Finance, as part of a March

_____

[1] App. to Opening Br. at 30–36 (altered corporate tax returns from 2007–2013); *id.* at 197–239 (altered bank statements from June 2014 to April 2015). The investigation also revealed that instead of using the funds received from his investors and lenders to grow the company, Hickman used the funds for personal expenses. App. to Answering Br. at 214–20 (Trial Tr., *State v. Hickman*, No. S1510010166, at 15–17, 20–21, 24–25 (Del. Super. Nov. 22, 2016)); App. to Opening Br. at 274–93 (Trial Tr., at 18–37).

[2] For example, the altered 2013 corporate tax return Hickman forwarded to investors listed $602,000 in gross receipts or sales, when the actual bank statements showed deposits of less than $10,000; $340,339 in cost of goods sold, when the actual bank statements showed spending of less

2015 loan application,[3] Hickman attached seven altered bank statements for each month from June to December 2014.[4] And, in an email to Viking Finance, as part of a June 2015 loan application,[5] he attached three altered bank statements for each month from October to December 2014.[6] The altered bank statements include inflated figures and invented transactions such as payments to attorneys, an engineer, and a manufacturer.[7] Ironwood's CEO explained at trial that to receive the kind of financing Hickman applied for, a business must have good cash flow, regular deposits, and a sufficient average balance.[8] He testified that if accurate bank statements had been submitted, Hickman would not have received financing.[9]

(4) The jury found Hickman guilty of six counts of securities fraud, six counts of offer or sale of unregistered securities, one count of theft, six counts of

---

than $10,000; and $77,546 in salaries and wages, when the actual bank statements showed no salaries or wages paid. App. to Opening Br. at 261–73 (Trial Tr., at 5–17).

[3] App. to Answering Br. at 145 (Trial Tr., *State v. Hickman*, No. S1510010166, at 62 (Del. Super. Nov. 18, 2016)).

[4] App. to Opening Br. at 218–39 (altered bank statements); *Id*. at 19–21 (Amended Indictment, *State v. Hickman*, No. S1510010166, at 10–12).

[5] App. to Answering Br. at 170 (Trial Tr., *State v. Hickman*, No. S1510010166, at 15 (Del. Super. Nov. 21, 2016)).

[6] App. to Opening Br. at 197–203 (altered bank statements); *Id*. at 21–22 (Amended Indictment, at 12–13).

[7] *Id*. at 157–95 (actual bank statements); *id.* at 261–73 (Trial Tr., at 5–17). The forged bank statements Hickman included with his application showed monthly deposits ranging from about $61,000 to $108,000 a month, *id.* at 218–39, when the actual deposits in any one year totaled less than $10,000, not including the investment proceeds. App. to Answering Br. at 215 (Trial Tr., at 16).

[8] App. to Answering Br. at 141–43 (Trial Tr., at 58–60).

[9] *Id.* at 152 (Trial Tr., at 75).

theft greater than $1500, one count of theft under $1500, seven counts of second degree forgery, and ten counts of third degree forgery.[10] On February 3, 2017, the court sentenced Hickman to three years at Level V suspended after two years with decreasing levels of supervision, and restitution to the victims totaling over $39,000. Hickman appealed only his forgery convictions.

(5)    Hickman argues the Superior Court erred by allowing the State to pursue a separate count of forgery for each altered document instead of one count for each email that contained a number of documents. According to Hickman, pursuing a separate count of forgery for each document attached to an email violated the multiplicity doctrine of the Double Jeopardy clause. While "[a]ppeals of constitutional issues generally receive *de novo* review,"[11] Hickman did not raise this issue before the trial court. Thus, we review for plain error.[12]

(6)    The Double Jeopardy Clause of the United States Constitution and the Delaware Constitution are similar. Both state in substance that no person shall be

---

[10] After the trial in Superior Court, the State entered a *nolle prosequi* on five counts of theft and six counts of third degree forgery. Hickman moved for judgment of acquittal on six counts: two counts of securities fraud, two counts of theft, and two counts of third degree forgery. The court granted the motion for judgment of acquittal in part, dismissing the two counts of third degree forgery, but denied the motion for the two counts of theft and the two counts of third degree forgery.

[11] *Nance v. State*, 903 A.2d 283, 285 (Del. 2006).

[12] *Williams v. State*, 796 A.2d 1281, 1284 (Del. 2002); *see also Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) ("Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process.").

"twice put in jeopardy of life or limb" for the same offense.[13]  "Double jeopardy, as a constitutional principle, provides the following protections: (1) against successive prosecutions; (2) against multiple charges under separate statutes; and (3) against being charged multiple times under the same statute."[14]  The third of these protections is known as the multiplicity doctrine, which includes "'the charging of a single offense in more than one count' of an indictment."[15]  The question to be answered is "whether one violation of a single statute or two discrete violations of that same statute" occurred.[16]

(7)     Under 11 *Del. C.* § 861(a)(3), "[a] person is guilty of forgery when, intending to defraud, deceive, or injure another person, . . . the person: (3) [p]ossesses a written instrument, knowing that it was made, completed or altered under circumstances constituting forgery."  The Code defines a "written instrument" as "any instrument or article containing written or printed matter or the equivalent thereof, used for the purpose of reciting, embodying, conveying or recording

---

[13] DEL. CONST. art. I, § 8; U.S. CONST. amend. V.

[14] *Williams*, 796 A.2d at 1285 (emphasis omitted).

[15] *Feddiman v. State*, 558 A.2d 278, 288 (Del. 1989) (quoting *Harrell v. State*, 277 N.W.2d 462, 464–65 (Wis. Ct. App. 1979)); *see id.* ("The division of a single offense into multiple counts of an indictment violates the double jeopardy provisions of the Constitutions of the State of Delaware and of the United States.").

[16] *Williams*, 796 A.2d at 1286 (citing *Rashad v. Burt*, 108 F.3d 677, 680 (6th Cir. 1997)).

information or constituting a symbol or evidence of value, right, privilege or identification."[17]

(8)     Hickman argues that the State "impermissibly divided a single crime of forgery into a series of spatial units" because each group of documents he transmitted by email should have been considered a single violation of 11 *Del. C.* § 861.[18] According to Hickman, charging him by the document rather than by the email violates the multiplicity prohibition.  The forgery statute, however, makes no distinction between groups of forged instruments and individual ones.  According to the statute, the possession of "*a* written instrument" is a crime.  Because Hickman forged multiple instruments—bank statements and tax returns—the State properly charged Hickman with multiple offenses of the forgery statute.

(9)     Hickman relies on *Zugehoer v. State*, in which the defendant was convicted of three counts of home improvement fraud based on a single offense— one count for each subpart of the statute.[19]  Under the statute, a party commits home improvement fraud either by "[f]ailing to substantially complete the home improvement," "[f]ailing to pay for the services, labor, materials or equipment," *or* "[d]iverting said funds" for another use.[20]  In *Zugehoer*, the defendant had done all

---

[17] 11 *Del. C.* § 863.
[18] Opening Br. at 13–15.
[19] 980 A.2d 1007, 1008 (Del. 2009).
[20] 11 *Del. C.* § 916(b)(4).

6

three.  This Court reversed the conviction, explaining that the subparts were just "multiple methods to commit a single offense"—not three separate offenses.[21]  Here, Hickman did not commit forgery by multiple methods; instead, he committed forgery by one method—possessing a forged document—multiple times.  Thus, there was no multiplicity violation.

(10)   In a similar case, *State v. Servello*, the defendant was convicted of three counts of perjury after making three false statements about the same general subject.[22]  The Connecticut court found that convicting the defendant of multiple counts did not violate the double jeopardy clause because each instance of perjury were "separate and distinct crimes . . . susceptible of separation into parts, each of which in itself constitute[d] a completed offense."[23]  The court explained that the three statements were not a single act of perjury because "the defendant did not merely reiterate the same false statement multiple times, but rather, he made three false statements involving three occurrences, and the state had to prove each of the defendant's statements false by proof specific to each statement."[24]  Similarly, each of Hickman's altered documents conveyed separate and distinct misinformation to

---

[21] *Zugehoer*, 980 A.2d at 1013–14.

[22] 835 A.2d 102, 111 (Conn. App. Ct. 2003).

[23] *Id.* at 110 (quoting *State v. Cotton*, 825 A.2d 189, 200 (Conn. App. Ct. 2003)).

[24] *Id.* at 111; *see also Feddiman*, 558 A.2d at 288–89 ("This Court has previously held that a 'continuum of criminal activity can constitute a violation of several distinct criminal statutes if each statutory provision requires proof of a fact the other does not.'") (quoting *Weber v. State*, 547 A.2d 948, 962 (Del. 1988)).

separate parties.  And, like in *Servello*, the State had to prove falsity "by proof specific to each [document]."[25]  Thus, the Superior Court did not plainly err by allowing the State to charge Hickman with multiple counts of forgery.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

[25] *Servello*, 835 A.2d at 111.