STATE of Wisconsin, Plaintiff-Respondent,

v.

Tina M. JACOBSEN, Defendant-Appellant.

Court of Appeals

*No. 2013AP830–CR. Submitted on briefs November 5, 2013. —Decided December 10, 2013.*

2014 WI App 13

(Also reported in 842 N.W.2d 365.)

413

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John Miller Carroll* of *John Miller Carroll Law Office*, Appleton.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Maura FJ Whelan*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Hoover, P.J., Mangerson and Stark, JJ.

¶ 1. STARK, J. Tina Jacobsen appeals a judgment convicting her of three counts of theft in a business setting and an order denying her postconviction motion for plea withdrawal. Jacobsen was charged with eight offenses in connection with the theft of nearly $500,000 from her employer. The charges were based on 289 individual thefts that took place over approximately six years. On appeal, Jacobsen argues her trial attorney was ineffective by failing to advise her that the charges could be challenged as duplicitous or multiplicitous and by failing to seek dismissal of the complaint on those grounds.

¶ 2. We conclude Jacobsen's trial attorney was not ineffective because the charges were not duplicitous or multiplicitous. We reject Jacobsen's argument that the State was required to charge her with either a single offense in connection with her entire course of conduct or with separate offenses for each of the 289 individual thefts. Instead, we conclude the State had discretion to charge Jacobsen with multiple offenses, each of which was based on a group of thefts that occurred during a specified time period. We therefore affirm the judgment of conviction and the order denying Jacobsen's postconviction motion.

## BACKGROUND

¶ 3. The State filed an eight-count criminal complaint against Jacobsen on May 31, 2011. The charges arose from Jacobsen's multi-year embezzlement of funds from her employer, the Community Blood Center (CBC). An information filed on July 12, 2011, contained the same eight counts.

¶ 4. The complaint alleged that Jacobsen used two distinct schemes to misappropriate funds from CBC. Most of the thefts were accomplished by Jacobsen's practice of "adding large amounts of money to her paycheck and categorizing them as reimbursements." The remainder of the thefts were part of a "fraudulent check writing scheme[,]" in which Jacobsen purported to issue checks to pay vendors, but actually made the checks payable to herself.

¶ 5. Counts 1 through 4 charged Jacobsen with theft in a business setting of an amount greater than $10,000, a Class G felony. *See* Wis. Stat. § 943.20(1)(b), (3)(c).[1] Count 1 alleged that Jacobsen transferred more

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

than $10,000 from CBC to herself between January 1 and December 31, 2009. According to forensic accountant Allan Mader, Jacobsen's excess reimbursements in 2009 totaled $33,302.75. Count 2 alleged that Jacobsen transferred more than $10,000 from CBC to herself between January 1 and December 31, 2010. Mader determined Jacobsen's excess reimbursements in 2010 totaled $81,853.84. Count 3 alleged that Jacobsen transferred more than $10,000 from CBC to herself between January 1 and April 12, 2011. Mader determined Jacobsen's excess reimbursements during that period totaled $32,000.

¶ 6. Count 4 alleged that Jacobsen converted to her own use more than $10,000 in "negotiable instruments" from CBC between January 1 and April 12, 2011. According to Mader, Jacobsen obtained $17,695.96 from CBC by issuing seventeen fraudulent checks to herself between March 15 and April 30, 2011. After Mader completed his analysis, CBC provided police with documentation showing that Jacobsen had used fraudulent checks to obtain an additional $300,000 from CBC.

¶ 7. Count 5 charged Jacobsen with theft in a business setting of an amount greater than $5,000 but not exceeding $10,000, a Class H felony. *See* WIS. STAT. § 943.20(1)(b), (3)(bm). The complaint alleged that Jacobsen transferred between $5,000 and $10,000 from CBC to herself between January 1 and December 31, 2008. Mader determined Jacobsen's excess reimbursements in 2008 totaled $5,725.46.

¶ 8. Count 6 charged Jacobsen with fraudulent writings, a Class H felony. *See* WIS. STAT. § 943.39(1). The complaint alleged that, on or about March 15, 2011, Jacobsen, "being an employee of a corporation, with intent to defraud, did falsify any record belonging to that corporation[.]"

416

¶ 9. Counts 7 and 8 each charged Jacobsen with theft in a business setting of an amount not exceeding $2,500, a Class A misdemeanor. *See* WIS. STAT. § 943.20(1)(b), (3)(a). Both counts alleged that Jacobsen transferred unspecified amounts of CBC's money to herself on or about January 1, 2006.

¶ 10. Jacobsen ultimately pled no contest to Counts 1, 2, and 5. The remaining counts were dismissed and read in at sentencing. During the plea hearing, Jacobsen admitted, "When I was employed at [CBC], I had written company checks to myself and also had changed payroll dollar amounts to myself to support a gambling addiction that I do have." She also stated, "I read the Criminal Complaint and I do not dispute the items that are listed." Jacobsen's attorney conceded, "[T]here's a sufficient factual basis [for Jacobsen's plea] contained within the Criminal Complaint. And Ms. Jacobsen does not dispute that at this point." Jacobsen agreed that the total amount she took from CBC was in "the ballpark of $470,000[.]" At sentencing, the State informed the court its final estimate of the amount taken was $485,630.80. Jacobsen agreed with that estimate. The president of CBC told the sentencing court Jacobsen had "engaged in theft on 289 separate occasions[.]"

¶ 11. Jacobsen received consecutive sentences totaling five years' initial confinement and thirteen years' extended supervision. She subsequently moved for postconviction relief, arguing, among other things, that she was entitled to withdraw her pleas because her trial attorney was ineffective by failing to consult with her regarding multiplicity and duplicity challenges to the charges and by failing to "move the court to dismiss the criminal complaint based on the grounds of multiplicity, duplicity, vagueness and/or indefiniteness[.]" (Capitali-

417

zation omitted.) At the *Machner*[2] hearing, Jacobsen's trial attorney testified he did not challenge the complaint on duplicity or multiplicity grounds because he concluded those issues were meritless after reviewing "the applicable law and jury instructions." The circuit court denied Jacobsen's postconviction motion, and this appeal follows.

## DISCUSSION

██ ██

¶ 12. To withdraw a guilty or no contest plea after sentencing, a defendant must prove "by clear and convincing evidence that withdrawal is necessary to correct a manifest injustice." *State v. James*, 176 Wis. 2d 230, 236–37, 500 N.W.2d 345 (Ct. App. 1993). Ineffective assistance of counsel can constitute a manifest injustice entitling the defendant to withdraw his or her plea. *State v. Berggren*, 2009 WI App 82, ¶ 10, 320 Wis. 2d 209, 769 N.W.2d 110.

¶ 13. To prevail on an ineffective assistance claim, a defendant must establish both that counsel performed deficiently and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the defendant fails to make a sufficient showing on one prong of the *Strickland* test, we need not address the other. *Id.* at 697. To prove deficient performance, a defendant must point to specific acts or omissions by counsel that are "outside the wide range of professionally competent assistance." *Id.* at 690. To demonstrate prejudice, a defendant seeking plea withdrawal must show " 'that there is a reasonable probability that, but for the counsel's errors, he [or she]

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

would not have pleaded guilty and would have insisted on going to trial.'" *State v. Bentley*, 201 Wis. 2d 303, 312, 548 N.W.2d 50 (1996) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

¶ 14. Our review of an ineffective assistance claim presents a mixed question of fact and law. *State v. Erickson*, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). We uphold the circuit court's findings of fact unless they are clearly erroneous. *Id.* However, the ultimate determinations of whether counsel's performance was deficient and prejudicial are questions of law that we review independently. *Id.*

¶ 15. Here, Jacobsen argues her trial attorney should have consulted with her about challenging the complaint as duplicitous or multiplicitous and should have moved to dismiss the complaint on those grounds. However, Jacobsen does not argue that Count 6, the fraudulent writings charge, was either duplicitous or multiplicitous. We therefore limit our discussion to the various theft charges.

¶ 16. In addition, although one of the headings in the argument section of Jacobsen's brief states that her trial attorney should have moved to dismiss the complaint because it was vague or indefinite, Jacobsen does not develop any argument supporting that theory. We need not address undeveloped arguments. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992). Further, Jacobsen's postconviction motion raised arguments that she does not renew on appeal. Those arguments are deemed abandoned, and we do not address them. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

419

## I. Duplicity

■■■

¶ 17. Jacobsen contends her trial attorney was ineffective by failing to challenge the charges against her as duplicitous. A complaint is duplicitous when it joins two or more separate offenses in a single count. *State v. Copening*, 103 Wis. 2d 564, 572, 309 N.W.2d 850 (Ct. App. 1981). "A duplicitous charge is defective because the jury may find the defendant guilty without the state proving each element of the offense beyond a reasonable doubt." *Id.*

■

¶ 18. However, when an offense is composed of continuous acts, it may be charged as a single count without rendering the charge duplicitous. *Id.* In other words, the State has discretion to charge a defendant with one continuing offense based on multiple criminal acts when "the separately chargeable offenses are committed by the same person at substantially the same time and relating to one continued transaction[.]" *State v. Miller*, 2002 WI App 197, ¶ 23, 257 Wis. 2d 124, 650 N.W.2d 850. In that situation, "[t]he nature of the charge is a matter of election on the part of the state." *Copening*, 103 Wis. 2d at 572.

■

¶ 19. The charges against Jacobsen fit squarely within the *Copening/Miller* doctrine. Each charge is based on multiple acts committed by Jacobsen at substantially the same time, relating to a single, continuing scheme. For instance, Count 1 is based on multiple acts of theft Jacobsen committed during 2009 as part of a continuing scheme to obtain money from CBC using phony reimbursements. Count 2 is based on multiple acts of theft Jacobsen committed as part of the same

continuing scheme during 2010. Count 4, which is based on a different, fraudulent check writing scheme, alleged Jacobsen committed multiple acts of theft pursuant to that scheme during 2011. Under *Copening* and *Miller*, the charges against Jacobsen are not duplicitous.

¶ 20. Moreover, the legislature has explicitly provided prosecutors with discretion to charge multiple thefts as a single crime when "[t]he property belonged to the same owner and the thefts were committed pursuant to a single intent and design or in execution of a single deceptive scheme[.]" WIS. STAT. § 971.36(3)(a). Each of the seven theft charges against Jacobsen alleged that the stolen property belonged to CBC. Counts 1, 2, 3, 5, 7, and 8 alleged that Jacobsen committed multiple thefts pursuant to a single false reimbursement scheme. Count 4 alleged she committed multiple thefts using a single fraudulent check writing scheme. Under § 971.36(3)(a), the State had discretion to charge Jacobsen as it did.

¶ 21. Jacobsen dismisses WIS. STAT. § 971.36(3) on the ground that it is a "pleading statute and not a penal statute." This argument makes no sense. Section 971.36(3) unambiguously states that, in a case involving more than one theft, "all thefts may be prosecuted as a single crime" if certain conditions are met. Jacobsen does not explain why this statute, which clearly gives prosecutors discretion to charge multiple related thefts as a single crime, is inapplicable in her case.

■■■■■

¶ 22. Further, while a prosecutor's discretion to charge separately chargeable offenses as a single crime is limited by "the purposes of the prohibition against duplicity[,]" *State v. Lomagro*, 113 Wis. 2d 582, 588, 335

N.W.2d 583 (1983), Jacobsen has not convinced us any of those purposes are implicated here.

> The purposes of the prohibition against duplicity are: (1) to assure that the defendant is sufficiently notified of the charge; (2) to protect the defendant against double jeopardy; (3) to avoid prejudice and confusion arising from evidentiary rulings during trial; (4) to assure that the defendant is appropriately sentenced for the crime charged; and (5) to guarantee jury unanimity.

*Id.* at 586–87. Jacobsen does not argue she received insufficient notice of the charges against her. As we explain below, the complaint did not expose Jacobsen to double jeopardy because the charges were different in fact. *See infra,* ¶¶ 29–31. Jacobsen did not go to trial, and she has not developed any argument that the complaint would have generated prejudicial evidentiary rulings against her if she had. Jacobsen does not argue she was inappropriately sentenced. Finally, she does not develop an argument that a jury could have convicted her with a less than unanimous verdict.[3]

¶ 23. Jacobsen cites *State v. Spraggin*, 71 Wis. 2d 604, 239 N.W.2d 297 (1976), to support her position that

[3] Jacobsen makes a single, unsupported statement that "not all of the amounts were correct[,]" so she "could have been convicted of crimes that did not occur simply because these charges were combined with other charges which she may have been guilty of." Jacobsen does not explain which "amounts" she is referring to. Moreover, Jacobsen stated during the plea hearing that she did not dispute "the items . . . listed" in the complaint. Her attorney stipulated that the complaint provided a sufficient factual basis for her pleas. At sentencing, Jacobsen did not dispute the amounts determined by Mader, the forensic accountant. By pleading no contest, Jacobsen conceded the complaint's factual accuracy. *See State v. Merryfield*, 229 Wis. 2d 52, 60–61, 598 N.W.2d 251 (Ct. App. 1999).

the charges are duplicitous. Spraggin was charged with two counts of receiving stolen property. *Id.* at 613. The two pieces of property she allegedly received—a television and a gun—were stolen by a single burglar in two separate burglaries from two different homes on two dates separated by nearly three months. *Id.* at 609. Spraggin obtained the television and gun in two separate bargains with the burglar. *Id.* at 613. At trial, the State successfully moved to consolidate the two counts into one. *Id.* On appeal, our supreme court held the consolidation was improper. *Id.* at 613–16. The court emphasized facts showing that the transactions were separate in every respect and were not part of a continuing criminal enterprise. *Id.* at 613. The court cited case law holding that the receipt of " 'different articles of stolen property at different times and on separate and unconnected occasions, constitute separate offenses and cannot be prosecuted as one crime, in one count, though all of the property is afterwards found in the possession of the defendant at the same time and place.' " *Id.* (quoting *Hamilton v. State*, 176 So. 89, 92 (Fla. 1937)). The court also rejected the State's theory that the counts were properly consolidated because both criminal acts were part of a "conspiracy" between Spraggin and the burglar. *Id.* at 614–15.

¶ 24. *Spraggin* is inapposite for four reasons. First, Spraggin's criminal acts were separate and were not part of a continuing criminal enterprise. Conversely, it is undisputed that all the thefts Jacobsen committed were part of two continuing schemes to misappropriate funds from CBC. Second, the *Spraggin* court relied on case law specific to the receipt of stolen property, which is inapplicable in Jacobsen's case. Third, Spraggin was not charged with theft, so Wis. Stat. § 971.36(3) was inapplicable. Fourth, unlike in

*Spraggin*, the State does not argue the charges against Jacobsen were proper because she was engaged in a conspiracy. Thus, *Spraggin* does not convince us the charges against Jacobsen were duplicitous.

## II. Multiplicity

¶ 25. Jacobsen also argues her attorney was ineffective by failing to challenge the charges against her as multiplicitous. "Multiplicity arises where the defendant is charged in more than one count for a single offense." *State v. Rabe*, 96 Wis. 2d 48, 61, 291 N.W.2d 809 (1980). One situation in which multiplicity challenges arise is "when a single course of conduct is charged in multiple counts of the same statutory offense (the 'continuous offense' cases)[.]" *State v. Derango*, 2000 WI 89, ¶ 27, 236 Wis. 2d 721, 613 N.W.2d 833.

¶ 26. We examine multiplicity claims using a two-part test. *State v. Eaglefeathers*, 2009 WI App 2, ¶ 7, 316 Wis. 2d 152, 762 N.W.2d 690. First, we consider whether the charged offenses are identical in law and in fact. *Id.* Then, we consider whether the legislature intended to authorize multiple punishments. *Id.* If the first part of the test reveals that the charged offenses are not identical in law and in fact, a presumption arises that the legislature did not intend to preclude cumulative punishments. *Id.*

¶ 27. Only the first part of the multiplicity analysis implicates a defendant's right to be free from double jeopardy. *State v. Grayson*, 172 Wis. 2d 156, 159 n. 3, 493 N.W.2d 23 (1992). "Once it is determined that the

offenses are different in law or fact, double jeopardy concerns disappear." *Id.* "The second factor of the test is solely a question of statutory interpretation. Criminal charges that are multiplicitous under this factor are impermissible because they contravene the will of the legislature." *Id.*

¶ 28. Applying the two-part test to Jacobsen's case, we conclude the seven theft charges are not multiplicitous. The State concedes the charges are the same in law because each one alleges Jacobsen violated the same statute—WIS. STAT. § 943.20(1)(b). *See State v. Lechner*, 217 Wis. 2d 392, 414, 576 N.W.2d 912 (1998). However, we agree with the State that the charges are not the same in fact. Offenses are different in fact if they "are either separated in time or are significantly different in nature." *State v. Stevens*, 123 Wis. 2d 303, 322, 367 N.W.2d 788 (1985). Offenses are separated in time, if there is a "sufficient break" in the defendant's conduct to constitute more than one offense. *State v. Warren*, 229 Wis. 2d 172, 180, 599 N.W.2d 431 (Ct. App. 1999). Offenses are significantly different in nature if a conviction for each offense requires proof of an additional fact that a conviction for the other offense does not. *Id.* Offenses are also significantly different in nature if each requires a " 'new volitional departure in the defendant's course of conduct.' " *State v. Anderson*, 219 Wis. 2d 739, 750, 580 N.W.2d 329 (1998) (quoting *State v. Eisch*, 96 Wis. 2d 25, 36, 291 N.W.2d 800 (1980)). "The fact that proof of one count may be, in many respects, the same as proof of other counts does not necessarily render the counts multiplicitous." *State v. Multaler*, 2001 WI App 149, ¶ 34, 246 Wis. 2d 752, 632 N.W.2d 89.

425

¶ 29. In Jacobsen's case, Count 4 is clearly not the same in fact as the other six theft charges. Count 4 alleged Jacobsen stole money from CBC using a fraudulent check writing scheme. The other theft counts alleged Jacobsen stole money from CBC using an excess reimbursement scheme. Thus, Count 4 required proof of facts not required for convictions on the other counts.

¶ 30. The six remaining theft charges are also not the same in fact, even though they were all based on Jacobsen's excess reimbursement scheme. Each charge alleged Jacobsen stole money from CBC during a distinct time period. *See Grayson*, 172 Wis. 2d at 160 (felony nonsupport charges not the same in fact, even though defendant's nonsupport was continuous over four years, because each charge alleged nonsupport during a distinct time period). *Grayson* precludes any argument that there was not a sufficient break in time between the offenses. Each charge also involved different amounts of money taken on different dates, provable by different paperwork and accounting records. *See State v. Swinson*, 2003 WI App 45, ¶ 31, 261 Wis. 2d 633, 660 N.W.2d 12 (theft by fraud charges not the same in fact because each one would be proven using a different fraudulent invoice). Further, each act of theft required a new volitional departure in Jacobsen's course of conduct. *See Anderson*, 219 Wis. 2d at 750.

¶ 31. Because the theft charges are not the same in fact, they did not violate Jacobsen's right to be free from double jeopardy. *See Grayson*, 172 Wis. 2d at 159 n.3. We therefore proceed to the second prong of the multiplicity analysis and consider whether the legislature intended to preclude cumulative punishments.

*Eaglefeathers*, 316 Wis. 2d 152, ¶ 7. Because the charges are not the same in fact, we presume the legislature did not intend to preclude cumulative punishments. *Id.*, ¶ 15. To overcome this presumption, Jacobsen must show clear legislative intent to the contrary. *See id.* When evaluating the legislature's intent, we consider the following four factors: (1) the statutory language; (2) legislative history and context; (3) the nature of the conduct involved; and (4) the appropriateness of multiple punishments. *Id.*

¶ 32. Jacobsen has not met her burden of showing a clear legislative intent to preclude cumulative punishments. First, WIS. STAT. § 971.36(3)(a) unambiguously states that, in a case involving multiple thefts, "all thefts *may* be prosecuted as a single crime if . . . [t]he property belonged to the same owner and the thefts were committed pursuant to a single intent and design or in execution of a single deceptive scheme[.]" (Emphasis added.) The corollary to this rule is that the thefts *may* be prosecuted individually. Section 971.36(3)(a) permits, but does not require, the State to charge all related thefts as a single count. Had the legislature intended to preclude cumulative punishments, it would have required all related thefts to be charged as a single count.

¶ 33. Second, Jacobsen has not cited any legislative history showing that the legislature intended to preclude cumulative punishments.

¶ 34. Third, the nature of the proscribed conduct does not indicate a clear legislative intent to preclude cumulative punishments. "An analysis of this third factor requires essentially the same analysis as whether the offenses are different in fact under the multiplicity test's first prong." *Warren*, 229 Wis. 2d at 186–87; *see also Grayson*, 172 Wis. 2d at 165. We have already

determined that the seven theft charges against Jacobsen are not the same in fact. *See supra,* ¶¶ 29–30. Thus, this factor does not evince an intent to preclude cumulative punishments.

¶ 35. Fourth, we agree with the State that multiple punishments are appropriate under the circumstances of this case. Our supreme court's reasoning in *Grayson* is instructive. Grayson was charged with four counts of failing to pay child support for more than 120 days. *Grayson,* 172 Wis. 2d at 158. It was undisputed that Grayson had failed to pay child support for a continuous four-year period. *Id.* Each count in the complaint alleged he had failed to pay child support for more than 120 days during a different calendar year. *Id.* Grayson argued the charges were multiplicitous, but the court rejected his argument, concluding the statute at issue "permit[ted] a prosecutor to charge one count of felony nonsupport for each 120–day term a person fails to pay child support, even if that person failed to pay over one continuous period." *Id.* In analyzing whether multiple punishments were appropriate, the court reasoned:

> Multiple punishments based on each 120–day period of nonsupport are not only appropriate, but essential, if the statute is to provide deterrence and proportionality in its operation.
>
> *State v. Hamilton,* 146 Wis. 2d 426, 432 N.W.2d 108 (Ct. App. 1988), illustrates the need for deterrence. In *Hamilton,* the court of appeals determined that a defendant who possesses at one time and place a number of items with altered or removed serial numbers (contrary to sec. 943.37(3), Stats.) may be prosecuted for a separate charge based on each altered article of personal property. *Id.* at 429. It reasoned that deterrence would not exist unless possession of each

item constituted a separate offense. *Id.* at 441. More specifically, the court stated the following at p. 441:

> If only a single charge and punishment is available ... no matter how many items are possessed, thieves and receivers are encouraged, not deterred. The more they possess, the greater their potential profit, with no concomitant increase in risk. We think such a result contrary to public policy in and of itself and is certainly contrary to the intent of the legislature.

> The same is true here. If a parent failing to provide child support for 120 days or more is liable to prosecution for only one offense no matter how long the period of nonsupport continues, the continuation of the failure to provide support is encouraged, not deterred. Multiple charges are not only appropriate, they are essential if the nonsupport statute is to deter long-term failures to provide support.

*Grayson,* 172 Wis. 2d at 166.

¶ 36. The *Grayson* court also stated that multiple charges were needed to assure proportionality between the harm caused and the punishment received for nonsupport. *Id.* at 166–67. The court reasoned that, the longer the period of nonsupport, the greater the harm inflicted on the defendant's child. *Id.* at 167. The court then explained,

> Our holding that [the statute criminalizing nonsupport] permits multiple counts, even if that person fails to pay over one continuous period, provides for punishment proportional to this increased harm. Otherwise, a person who fails to provide support for one year and a person who

> fails to provide support for 18 years would be subject to the same penalty.

*Id.*

429

¶ 37. The same analysis largely applies here. If the State were permitted to charge Jacobsen with only one count of theft in connection with a course of conduct spanning six years and 289 thefts, neither Jacobsen nor anyone else would be deterred from continuing a larcenous scheme year after year. Multiple charges are also appropriate to assure proportionality between the harm caused by Jacobsen's conduct and the punishment received. Jacobsen stole nearly $500,000. If the State were limited to charging her with one count of theft, she would be subject to the same maximum punishment as a person who stole $10,001. We agree with the State that this is an unreasonable result.[4]

¶ 38. Jacobsen has not overcome the presumption that the legislature did not intend to preclude cumulative punishments. As a result, she has failed to demonstrate that the charges against her were multiplicitous.

### III. Decision to charge multiple offenses, each based on a group of thefts

¶ 39. In her reply brief, Jacobsen clarifies that she believes the State could have properly charged her with a single offense in connection with her entire course of conduct, or it could have charged her with separate counts for each of the 289 individual thefts. However, she argues it was not within the State's discretion to charge multiple offenses, each based on more than one theft. She contends there is no authority "that allows

---

[4] The theft statute does include a graduated penalty structure, with the highest maximum penalty available when the value of the stolen property exceeds $10,000. *See* WIS. STAT. § 943.20(3). However, unless multiple counts exceeding the $10,000 threshold are permitted, that structure is ineffective in cases like this one where the amounts stolen are so large.

the State to pick and choose which offenses to group together for charging purposes."

¶ 40. In support of her position, Jacobsen cites *State v. George*, 69 Wis. 2d 92, 230 N.W.2d 253 (1975). There, Louis George and Robert Tollefson were charged, respectively, with thirty and ten counts of commercial gambling, contrary to Wis. Stat. § 945.03 (1973–74). *George*, 69 Wis. 2d at 94–96. Both complaints alleged continuing violations of the commercial gambling statute, but charged a series of separate counts. *Id*. The majority of the counts alleged the defendants had "received bets" "regularly" on a general type of sporting event—for instance, "professional football games" or "college football games"—and specified a time period between two weeks and four months long in which the bets were received. *Id*. One count in the George complaint and two counts in the Tollefson complaint alleged the defendants had accepted bets on a specific sporting event—the 1974 Super Bowl. *Id*. With few exceptions, all of the counts in each complaint overlapped in time with at least one other count. *Id*. at 95–96.

¶ 41. The circuit court dismissed all the charges except those pertaining to the 1974 Super Bowl and one other count in the Tollefson complaint, finding that they were duplicitous, multiplicitous, or vague. *Id*. at 94–96. The supreme court affirmed, explaining:

> We conclude that if the 29 dismissed counts [in the George complaint] allege continuous offenses they are faulty because they are multiplicitous. If they allege single offenses they are faulty because they are duplicitous, vague and are not sufficient to afford the defendant a basis to plead or prepare a defense. The same objections apply to the seven counts dismissed in the Tollefson complaint.

431

. . . .

> We perceive no valid reason under the statute . . . why an individual cannot be charged with one continuous offense of commercial gambling or one or more individual offenses. The state should be able to elect whether to proceed on a complaint alleging one continuous offense or a single offense or series of single offenses. The defendant, at the election of the state, can be charged with one continuous offense but only one, or with one or more specific individual offenses but not both, for the reasons set forth above.

*Id.* at 99–100 (footnote omitted).

¶ 42. At first blush, *George* appears to support Jacobsen's position. However, we conclude for two reasons that *George* is distinguishable.

█

¶ 43. First, Wis. Stat. § 971.36(3) specifically allows a case involving multiple thefts to be prosecuted as either a continuous crime or a series of individual crimes. There is no comparable statute applicable to commercial gambling cases.

¶ 44. Second, the theft statute Jacobsen was prosecuted under includes a graduated penalty structure, but the commercial gambling statute at issue in *George* did not. *Compare* Wis. Stat. § 943.20(3), *with* Wis. Stat. § 945.03 (1973–74). Theft defendants are subject to different penalties depending on the amount stolen. *See* Wis. Stat. § 943.20(3). Those who steal more than $10,000 are subject to the harshest penalty. *See id.* In contrast, the commercial gambling statute applied in *George* merely provided that the penalty for "receiv-[ing] . . . a bet" was a fine of not more than $5,000, imprisonment of not more than one year, or both. *See* Wis. Stat. § 945.03 (1973–74). The statute did not delineate greater or lesser penalties depending on the

value of the bet. The theft statute's graduated penalty structure supports a charging system in which a defendant may be charged with a new count of theft for every $10,000 stolen, even if each count is based on a series of thefts.

¶ 45. Federal courts have applied similar reasoning to allow the government to split a single continuing offense into multiple continuing offenses for charging purposes. *See United States v. Carter*, 804 F.2d 508, 511 (9th Cir. 1986); *United States v. Newman*, 701 F. Supp. 184, 187 (D. Nev. 1988). In those cases, the courts held that, although an indictment cannot divide a single act into multiple offenses, it can treat a series of related acts occurring within a specified time period as multiple continuing offenses, and it can group the acts by date so that each count meets the applicable statute's jurisdictional requirement.

¶ 46. *Carter* involved the interstate transportation of 68,000 record albums that were stolen during a two-year period. *Carter*, 804 F.2d at 509. The records were stolen from stores in Washington state and shipped to Chicago and Boston in at least 124 separate shipments. *Id.* The defendants were charged with five counts of knowingly transporting stolen property worth $5,000 or more in interstate commerce. *Id.* at 509–10. The government aggregated all the shipments to Boston into one count. *Id.* at 510. The Chicago shipments were aggregated and then divided chronologically into four separate counts. *Id.* By dividing the Chicago shipments in this way, the government was able to charge the defendants with five counts that met the $5,000 jurisdictional requirement of the illegal transportation statute. *Id.*

¶ 47. The defendants argued the aggregation and subdivision of the Chicago shipments into multiple

433

counts was multiplicitous. They conceded the government could aggregate related shipments to meet the statute's jurisdictional requirement, but they argued only one substantive count could be charged in connection with the aggregated shipments. *Id.* Thus, the question before the court was "whether aggregable offenses also may be subdivided into separate charges." *Id.* at 511. The court concluded they could, explaining:

> The government divided 124 shipments into five counts which each include a series of related transactions and which each meet the jurisdictional amount. While all the shipments are part of one overall scheme, the government is not limited to charging only one count of violating [the illegal transportation statute].

> The indictment did not divide a single transportation into multiple offenses, but rather treated each series of transportations occurring within a specified time period as a separate offense. Since the appellants concede the logic of charging the transportations to different cities as different offenses, and since [prior case law] allows subdivision of an overall scheme into its constituent parts, we have no difficulty endorsing the subdivision of the overall scheme in this case on a chronological basis.

*Id.* (footnote omitted).

¶ 48. Further, in *Grayson*, our supreme court upheld the State's decision to charge the defendant with multiple counts of failing to pay child support for over 120 days, even though each count arose from a single, continuous course of conduct lasting four years. *Grayson*, 172 Wis. 2d at 158. The court held it was permissible for the State to charge the defendant with a separate count for each calendar year in which he failed to pay child support. Similarly, we hold the State properly exercised its prosecutorial discretion by charg-

ing Jacobsen with one count of theft for each calendar year in which she stole money from CBC. We reject Jacobsen's argument that the State was required to charge her with either a single count in connection with her entire course of conduct or with separate counts for each of the 289 individual thefts. A prosecutor must have discretion "at the charging stage to issue charges which coincide with the evidence available and the gravity of the particular course of conduct involved." *Lomagro*, 113 Wis. 2d at 589. That is precisely what the State did in Jacobsen's case.

## IV. Ineffective assistance

¶ 49. An attorney does not perform deficiently by failing to make a losing argument. *See State v. Toliver*, 187 Wis. 2d 346, 360, 523 N.W.2d 113 (Ct. App. 1994). Any argument that the charges against Jacobsen were duplicitous or multiplicitous would have failed. Consequently, Jacobsen's trial attorney did not perform deficiently by failing to inform her the charges could be challenged as duplicitous or multiplicitous or by failing to seek dismissal of the complaint on those grounds. Thus, Jacobsen did not receive ineffective assistance of counsel, and she has failed to establish a manifest injustice that would entitle her to withdraw her no contest pleas.

*By the Court.*—Judgment and order affirmed.