BRASH, J.
¶ 1 Terrell Antwain Kelly appeals his judgment of conviction, entered upon his guilty plea to second-degree sexual assault of a child, and an order denying his postconviction motion. Kelly asserts that both of his trial attorneys were ineffective and, as such, his conviction should be vacated. In the alternative, Kelly requests sentence modification on the grounds that his intellectual disability is a new factor warranting modification. We affirm.
BACKGROUND
¶ 2 The charges against Kelly stem from a relationship between Kelly and L.N.J. that began in 2006 when L.N.J. was fourteen years old; Kelly is eleven years older. The Milwaukee Police Department (MPD) investigated the matter in August 2006 as second-degree sexual assault of a child, but L.N.J.'s mother did not want to press charges because she felt "blessed" that L.N.J. was giving her another grandchild. L.N.J. gave birth to Kelly's child in December 2006.
¶ 3 Over the next six years, L.N.J. had two more children with Kelly. Additionally, during that time MPD received seventeen calls regarding domestic violence incidents between Kelly and L.N.J. Kelly was eventually charged in March 2014 with second-degree sexual assault of a child under the age of sixteen for the conception of their first child in early 2006. Furthermore, a week after that charge was filed, previously dismissed domestic abuse charges-relating to one of the many domestic violence calls investigated by MPD-were reinstated against Kelly.
¶ 4 Kelly entered into a plea agreement in July 2014 in which he pled guilty to the second-degree sexual assault of a child charge, and the domestic violence charges were dismissed but read in. Kelly was sentenced to ten years of initial confinement and eight years of extended supervision.
¶ 5 Kelly subsequently filed a motion for postconviction relief on grounds of ineffective assistance of counsel. Kelly had two attorneys who provided representation during these proceedings: Attorney Scott Anderson, who represented Kelly through the plea process, and Attorney James Toran, who represented Kelly at sentencing. Kelly asserted that both attorneys were ineffective.
¶ 6 Kelly's claim regarding Attorney Anderson relates to the advice Kelly was given regarding his plea. The State had offered Kelly the choice of two plea deals: either plead guilty to the sexual assault charge and have the domestic violence charges dismissed but read in, or plead guilty to the domestic violence charges and have the sexual assault charge dismissed but read in. With either option, the State had agreed to recommend five to eight years of initial confinement. Attorney Anderson advised Kelly to plead guilty to the sexual assault charge because Attorney Anderson believed it would result in a more favorable sentence, even though there was a greater penalty exposure with the sexual assault charge and it required lifetime sex offender registration. Kelly argued that this was ineffective assistance because there was no basis for Attorney Anderson's advice.
¶ 7 Attorney Toran was retained by Kelly after the plea hearing but before sentencing. In his ineffective assistance claim against Attorney Toran, Kelly stated that he had expressed his displeasure to Attorney Toran over having pled guilty to the sexual assault charge, and Attorney Toran advised him that it was too late to withdraw his plea. Kelly argued that Attorney Toran's performance was deficient because he did not accurately explain the standard for plea withdrawal to Kelly.
¶ 8 The circuit court held a Machner[1] hearing over several days in April, May, and June of 2017, during which Kelly, Attorney Anderson, and Attorney Toran all testified. After considering the testimony and submissions of the parties, the circuit court denied Kelly's postconviction motion in full. The court, which adopted the State's proposed findings of fact and conclusions of law, found that neither lawyer was deficient in his performance.
¶ 9 As an alternative argument in his postconviction motion, Kelly asserted that he was entitled to sentence modification due to the existence of a new factor that was not known at sentencing. Specifically, he contended that when he was sentenced, the circuit court[2] was unaware that he had an intellectual disability; instead, the court knew only that he had a learning disability at the time of sentencing.
¶ 10 The court rejected his alternative argument. It found that information relating to Kelly's disability was not a new factor because it had been "put forth before the [c]ourt at the time of sentencing" and that the "only thing ... that has changed is sort of the extended definition" of his disability. This appeal follows.
DISCUSSION
I. Ineffective Assistance of Counsel Claims
¶ 11 We first address Kelly's claims that both attorneys who represented him at trial were ineffective. To prove ineffective assistance of counsel, a defendant must show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. Strickland v. Washington , 466 U.S. 668, 687 (1984). In Wisconsin, we evaluate ineffective assistance of counsel claims using the two-prong test set forth in Strickland . State v. Roberson , 2006 WI 80, ¶ 28, 292 Wis. 2d 280, 717 N.W.2d 111.
¶ 12 "To prove constitutional deficiency, the defendant must establish that counsel's conduct falls below an objective standard of reasonableness." State v. Love , 2005 WI 116, ¶ 30, 284 Wis. 2d 111, 700 N.W.2d 62. "To prove constitutional prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (citations and internal quotation marks omitted). If a defendant fails to satisfy one component of the analysis, a court need not address the other. Strickland , 466 U.S at 697.
¶ 13 Our standard of review for ineffective assistance of counsel claims presents "a mixed question of law and fact." State v. Johnson , 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). The findings of fact made by the circuit court "will not be overturned unless clearly erroneous." Id. However, "[t]he ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently." Id. at 128.
¶ 14 With regard to this standard of review, Kelly asserts that in adopting the findings of fact submitted by the State, the circuit court provided no analysis or explanation of its reasoning. Thus, Kelly urges us to view those findings of fact "with skepticism," although Kelly does not assert that those findings of fact were erroneous, but rather contends that Attorney Anderson was deficient in his explanation.
¶ 15 It is well-established law that in our review of a circuit court's discretionary decision, it must be shown that the decision was " 'the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination.' " Trieschmann v. Trieschmann , 178 Wis. 2d 538, 541-42, 504 N.W.2d 433 (Ct. App. 1993) (citation omitted). In order to meet this requirement, the circuit court "must not only state its findings of fact and conclusions of law, but also state the factors upon which it relied in making its decision." Id. at 542. In other words, "judges must not only make their independent analyses of issues presented to them for decision, but should also explain their rationale to the parties and to the public." State v. McDermott , 2012 WI App 14, ¶ 9 n.2, 339 Wis. 2d 316, 810 N.W.2d 237.
¶ 16 We agree that in this case it would have been beneficial for the circuit court to be more thorough in its explanation on the record regarding its findings of fact. However, the court had requested at the end of the Machner hearing that both parties submit proposed findings of fact and conclusions of law prior to it issuing its decision. Furthermore, the court stated on the record at the time of its decision that it had reviewed those submissions and determined that it would adopt the State's version. Thus, the parties were both privy to the reasoning behind the findings. We therefore determine that the findings of fact were sufficiently set forth by the circuit court in its decision on Kelly's ineffective assistance claims. See Johnson , 153 Wis. 2d at 127. Accordingly, we turn to Kelly's claims against his trial attorneys.
A. Claim Against Attorney Anderson
¶ 17 With regard to Attorney Anderson, Kelly argues that his advice to plead guilty to the sexual assault charge constitutes deficient performance, primarily due to the longer sentence exposure for that crime. Attorney Anderson explained at the Machner hearing his basis for providing this advice: he believed that pleading guilty to the sexual assault charge, which had occurred eight years prior and was based on a consensual, non-violent relationship, gave rise to an argument that the sentence would likely be below the State's recommendation-which was the same for either plea agreement-of five to eight years of initial confinement. Conversely, Attorney Anderson believed that pleading guilty to the domestic violence charges would likely have resulted in a sentence closer to the high side of the State's recommendation.
¶ 18 In his argument, Kelly points out that his maximum sentence exposure for the sexual assault charge was higher than that for the domestic violence charge. Moreover, the initial confinement portion of his sentence-ten years-is in fact two years over the maximum initial confinement period of eight years for the domestic violence charges. Nevertheless, the circuit court agreed with the State that Attorney Anderson's strategy was reasonable.
¶ 19 Based on the facts and circumstances of the case, we agree with the circuit court. In pleading guilty to the sexual assault charge, the factors considered by the sentencing court would include the fact that Kelly and L.N.J. had a consensual sexual relationship that resulted in children. While the court would be aware of the violence involved in the domestic abuse incidents, Attorney Anderson believed, based on his experience, that the court would not be as directly focused on those incidents.
¶ 20 "Counsel's decisions in choosing a trial strategy are to be given great deference." State v. Balliette , 2011 WI 79, ¶ 26, 336 Wis. 2d 358, 805 N.W.2d 334. We find that this strategy was reasonable, and therefore Attorney Anderson was not deficient in his performance. See Love , 284 Wis. 2d 111, ¶ 30.
¶ 21 Even if Attorney Anderson's performance was deficient in that respect, Kelly has failed to prove that he was prejudiced by that deficiency. Kelly stated that he would have accepted the other plea deal relating to the domestic violence charges but for Attorney Anderson's advice. However, the record suggests otherwise. In the first place, there was testimony by Kelly at the Machner hearing that he did not want to be characterized as a violent person. Additionally, there was evidence that L.N.J. was not cooperating with the State, which would have made the domestic abuse charges difficult to prove. Based on these factors, Kelly has not established that he would have taken the domestic violence plea deal and, as a result, he has not demonstrated that he was prejudiced by Attorney Anderson's advice to take the sexual assault plea deal. See State v. Koller , 2001 WI App 253, ¶ 9, 248 Wis. 2d 259, 635 N.W.2d 838 ("Showing prejudice means showing that counsel's alleged errors actually had some adverse effect on the defense.").
¶ 22 Therefore, because Kelly has not proven that Attorney Anderson was deficient or that his defense was prejudiced, his claim against Attorney Anderson fails. See Strickland , 466 U.S at 697.
B. Claim Against Attorney Toran
¶ 23 We next turn to Kelly's claim against Attorney Toran, who was retained by Kelly at his sentencing after he terminated Attorney Anderson.[3] Attorney Toran had previously represented Kelly on the domestic violence charges until they were dismissed. Kelly claims that Attorney Toran never explained to him that he had the option of withdrawing his plea; in fact, Kelly asserts that Attorney Toran advised him that it was "too late" to withdraw his plea prior to sentencing. However, at the Machner hearing, Attorney Toran testified that had Kelly indicated that he wanted to withdraw his plea, Attorney Toran would have requested an adjournment of the sentencing hearing, ordered a transcript of the plea hearing, and filed a motion for plea withdrawal. The circuit court found that Attorney Toran's testimony was more credible than Kelly's, and that Kelly was likely "taking a fragment of a conversation out of context."
¶ 24 A plea may be withdrawn prior to sentencing for " 'any fair and just reason' " as determined at the discretion of the circuit court. State v. Jenkins , 2007 WI 96, ¶ 28, 303 Wis. 2d 157, 736 N.W.2d 24 (citation omitted). However, "[w]ithdrawal of a guilty plea before sentencing is not an absolute right." Id. , ¶ 32. The defendant must provide a reason that is "something other than ... belated misgivings about the plea." Id. The defendant has the burden of proving, by a preponderance of the evidence, that the reason given for plea withdrawal is fair and just. Id.
¶ 25 Here, Kelly's asserted reason for plea withdrawal appears to fall into the category of "belated misgivings," and would not likely have been successful on a motion for plea withdrawal. See id. "An attorney does not perform deficiently by failing to make a losing argument." State v. Jacobsen , 2014 WI App 13, ¶ 49, 352 Wis. 2d 409, 842 N.W.2d 365. Nor does Kelly demonstrate prejudice by showing that the plea withdrawal would have been granted and led to a different result.
¶ 26 Again, Kelly has failed to prove deficient performance or prejudice to his defense in his ineffective assistance claim against Attorney Toran, and thus we reject that claim as well.
II. Sentence Modification
¶ 27 Finally, we turn to Kelly's argument that he is entitled to sentence modification because the circuit court did not understand the full extent of his disability. Specifically, Kelly argues that the circuit court was aware that he had a learning disability, when he in fact has an intellectual disability. Kelly asserts that there is a significant difference between these characterizations-such as qualifying for social security disability benefits-which renders his condition a new factor.
¶ 28 The definition of a new factor is " 'a fact or set of facts highly relevant to the imposition of sentence' " but not taken into consideration at the time of sentencing " 'because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.' " State v. Harbor , 2011 WI 28, ¶ 40, 333 Wis. 2d 53, 797 N.W.2d 828 (citation omitted). "The existence of a new factor does not automatically entitle the defendant to sentence modification"; rather, that determination is made at the discretion of the circuit court. Id. , ¶ 37.
¶ 29 The circuit court found that the additional information regarding Kelly's disability was not a new factor. Instead, it deemed it to be merely an "extended definition" of the disability that was known to the court at the time of sentencing. The record supports that finding. At sentencing, the court not only noted that Kelly had a learning disability, but also recognized that he was eligible for social security disability benefits, and stated that he would likely benefit from "some form of cognitive therapy."
¶ 30 Thus, the record indicates that the circuit court based its decision on relevant facts and the proper standard of law. See Trieschmann , 178 Wis. 2d at 541-42. It was therefore not an erroneous exercise of discretion.
¶ 31 In sum, we affirm the judgment of conviction as well as the circuit court's denial of Kelly's postconviction motion.
By the Court. -Judgment and order affirmed.

See State v. Machner , 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

Kelly's plea was taken by the Honorable David Borowski; he was sentenced by the Honorable Daniel Konkol. His postconviction motion was heard by the Honorable M. Joseph Donald.

Sentencing was originally scheduled for July 23, 2014, but was adjourned at the request of Attorney Anderson after he ordered a pre-sentence investigation report. A Stipulation for Substitution of Attorneys was signed by Attorney Anderson on October 1, 2014, and by Attorney Toran on October 2, 2014-the day before the rescheduled sentencing hearing.