COURT OF APPEALS
DECISION
DATED AND FILED

July 31, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP1690**

**STATE OF WISCONSIN**

Cir. Ct. No. 2009CI1

**IN COURT OF APPEALS
DISTRICT II**

IN RE THE COMMITMENT OF SCOTT R. SCHMIDT:

STATE OF WISCONSIN,

    PETITIONER-RESPONDENT,

V.

SCOTT R. SCHMIDT,

    RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Walworth County: KRISTINE E. DRETTWAN, Judge. *Affirmed.*

Before Neubauer, Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Scott R. Schmidt appeals an order denying his WIS. STAT. ch. 980 (2021-22)[1] petition for discharge from commitment as a sexually violent person. He also appeals from an order denying postcommitment relief. On appeal, Schmidt argues the circuit court erred by denying his motion for a new discharge hearing. He contends he is entitled to a new hearing because his trial counsel was ineffective in counsel's handling of letters Schmidt received from a woman named Alisa. Schmidt also argues the circuit court erroneously exercised its discretion at the postcommitment hearing by not allowing Alisa to testify by video conference. We affirm.

## BACKGROUND

¶2 In 1990, Schmidt repeatedly sexually assaulted a woman that he followed to her home. He was convicted of four counts of first-degree sexual assault along with burglary, false imprisonment, and witness intimidation. In 2009, before Schmidt was set to be released from prison, the State petitioned to have him committed as a sexually violent person under WIS. STAT. ch. 980. After a jury trial, the court ordered Schmidt to be committed until he was no longer a sexually violent person. In 2021, Schmidt petitioned for discharge from his ch. 980 commitment. The court held a bench trial on Schmidt's petition.

¶3 At trial, in order to continue Schmidt's commitment, the State was required to prove by clear and convincing evidence: (1) Schmidt had been convicted of a sexually violent offense; (2) Schmidt had a qualifying mental health disorder under WIS. STAT. § 980.01(2); and (3) it was more likely than not that he would commit another act of sexual violence. *See **State v. Hager**, 2018 WI 40, ¶7 n.7, 381

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Wis. 2d 74, 911 N.W.2d 17. Schmidt stipulated that he still met the first two elements for continued commitment. The trial was therefore limited to whether the State could prove by clear and convincing evidence that it was more likely than not that Schmidt would commit another act of sexual violence.

¶4 At trial, Dr. Bradley Allen testified he was a psychologist for the State of Wisconsin and he prepared Schmidt's most recent annual report for the Department of Health Services under WIS. STAT. § 980.07. As relevant to the issues in this appeal, Allen employed two actuarial risk instruments in his report to measure Schmidt's risk of future dangerousness: the Static-99R and the STABLE-2007. Based on these assessment tools, Allen believed Schmidt's lifetime risk of reoffending was 18.7 percent. Allen therefore concluded Schmidt's risk was below the "more likely than not" standard required for continued commitment.

¶5 At trial, Allen made some adjustments to his risk assessment after reviewing records from the time period after he drafted his report. First, Allen noted he was concerned about some communication between Schmidt and Schmidt's friend from Texas, Alisa. Schmidt communicated to Alisa that she would have to submit to his sexual advances, including anal sex, and she could not say no. Allen believed Schmidt's statements to Alisa amounted to stereotypical controlling behavior. Allen therefore increased his scoring on the dynamic risk factor of hostility toward women. Allen also testified that he read about Alisa's response to Schmidt's communication, and Alisa indicated she was upset and felt manipulated. At one point, Alisa referred to Schmidt "as a sexual deviant who was preparing to rape again."

¶6 Second, Allen explained that when he wrote his report, one treatment goal for Schmidt was that Schmidt participate in a penile plethysmograph ("PPG")

evaluation and polygraph testing. A PPG evaluation is used to assess the nature and extent of sexual deviancy. In 2020, Schmidt participated in a PPG evaluation but the results were determined to be "uninterpretable" because Schmidt did not reach the minimum arousal threshold. A post-PPG polygraph was then used to verify whether Schmidt made deliberate attempts to control his arousal and the results indicated Schmidt was "untruthful" when he denied deliberate attempts to "dissimulate" his arousal. Allen noted that, in the time between when he wrote his report and trial, Schmidt had still not participated in a PPG evaluation or polygraph test. Based on the lack of testing, the communications between Schmidt and Alisa, and the current high degree of masturbation, Allen concluded that Schmidt was a high risk on the sex drive and preoccupation dynamic risk factor.

¶7     Third, Allen changed his assessment of the dynamic risk factor of using sex as coping. Allen noted an increase in stress related to a high degree of masturbation.

¶8     Allen's changes in scoring moved Schmidt's STABLE-2007 score from an eight to a thirteen or fourteen. This, in turn, caused Allen to opine that Schmidt's risk of reoffending within his lifetime was 39 percent as opposed to 18.7 percent. Allen testified that the 39 percent risk level was still below the legal threshold for continued commitment.

¶9     Allen also testified that the actuarial tools could be overridden if someone concluded that the offender indicated an intent to reoffend. Allen believed that Schmidt had not done so in the communication to Alisa, but Allen noted that some of the letters from Alisa could be interpreted as an intent to reoffend.

¶10     On cross-examination, Allen agreed that the letters changed his risk assessment slightly, but that even after review, he still believed that Schmidt was

below the legal threshold for continued commitment. Allen also knew that there were a number of letters exchanged between the couple. Allen admitted that he had incorrectly assumed based on the letters that Alisa and Schmidt were no longer in a relationship. He also expressed a lack of knowledge about more positive messages in the letters including Alisa's remorse and desire to continue the relationship. Allen, however, testified that any remorse from Alisa would not change his opinion because his opinion was based on Schmidt's statements to Alisa.

¶11 The circuit court concluded Schmidt's history was incredibly concerning. It gave an overview of Schmidt's criminal history as well as his sexually inappropriate behaviors, including making unwanted sexual advances, window peeping, voyeuristic activities with an estimated twenty-to-thirty victims, exhibitionism, solicitation, and unwanted touching. The court also noted that the actuarial tests were not crystal balls, have limitations, and were somewhat subjective. The court emphasized that if Schmidt had been one point higher on the Static-99R, then his risk would have been over fifty percent.

¶12 The court was also concerned about Schmidt's manipulation and domineering behavior toward Alisa with regard to sex and control. The court found that Schmidt's communication to Alisa showed a stated intent to reoffend. The court was also concerned that Schmidt's last PPG evaluation was in January 2020, it was uninterpretable, and the follow-up polygraph indicated Schmidt was untruthful. The court stated "[t]his is extremely concerning to this court and there's been no PPG or polygraph since that, over two years ago." Ultimately, the court concluded that the State met its burden of proof and denied Schmidt's petition for discharge.

¶13     Schmidt filed a postcommitment motion that alleged, in part, trial counsel was ineffective for failing to object to the mention of the letters from Alisa. Alternatively, Schmidt argued trial counsel was ineffective for failing to offer into evidence additional letters Schmidt received from Alisa.   The circuit court scheduled a ***Machner***[2] hearing.

¶14     Schmidt sought to have Alisa testify at the ***Machner*** hearing via video conference.[3]   Schmidt made an offer of proof that Alisa would authenticate the letters she wrote to Schmidt, testify that she wrote the letter calling Schmidt a "sexual deviate" because she was upset that he referred to her by another woman's name, and offer her opinion that her "current view" was that Schmidt is not dangerous.   The circuit court excluded Alisa's testimony on the basis that it was not relevant to the question of whether trial counsel provided ineffective assistance.

¶15     At the ***Machner*** hearing, Schmidt's trial counsel testified that he knew about the letters from Alisa and had read them.   Counsel testified there were both complimentary and negative things in the letters.   When Allen testified about the letters, counsel did not object because he did not believe there was a basis to object. Counsel explained all the letters and the notes about them were in the Sand Ridge Secure Treatment Center records and the sort of material that an expert would rely on for an opinion in these types of cases.

¶16     Schmidt's trial counsel also testified that he made the strategic decision not to introduce all the letters into evidence at Schmidt's discharge hearing because he did not want to distract from the fact that, even with the adjustments

---

[2] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[3] Alisa is incarcerated in prison in Texas for murder.

Allen made during trial, the State did not have an expert that could testify that Schmidt still met the criteria for commitment. Counsel explained he elicited testimony on cross-examination from Allen that demonstrated there were multiple letters between the couple and they were still in a relationship. The letters were admitted into evidence.

¶17 The circuit court concluded trial counsel was not deficient for failing to object to Allen's mention of the letters from Alisa. The circuit court found that the information was in Schmidt's Sand Ridge file and the type of information that experts would rely on in making risk assessments for WIS. STAT. ch. 980 cases. The court also concluded that Schmidt was not prejudiced by trial counsel's failure to object to Allen's testimony. The court explained that if trial counsel had objected, it would not have sustained the objection.

¶18 As to Schmidt's alternative argument, the circuit court found that Schmidt's trial counsel made a strategic and deliberate decision not to introduce the packet of letters from Alisa because counsel wanted to focus on the fact that Allen opined Schmidt did not meet the legal threshold for continued commitment. The court concluded counsel's decision was not deficient performance. The court also determined that the letters would not have changed any of the court's factual findings at trial and therefore Schmidt had not established prejudice. The court concluded Schmidt failed to establish counsel was ineffective and denied Schmidt's motion. Schmidt appeals.

**DISCUSSION**

¶19 On appeal, Schmidt first renews his argument that trial counsel was ineffective in his handling of Alisa's letters. "Appellate review of an ineffective assistance of counsel claim is a mixed question of law and fact." ***State v. Dalton***,

7

2018 WI 85, ¶33, 383 Wis. 2d 147, 914 N.W.2d 120. "The circuit court's findings of fact will not be disturbed unless they are clearly erroneous." *Id.* "However, the ultimate determination of whether the attorney's performance falls below the constitutional minimum is a question of law we review independently of the determinations rendered by the circuit court[.]" *Id.*

¶20     To establish a claim of ineffective assistance, a defendant must prove both: (1) deficient performance by counsel; and (2) prejudice resulting from that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Sholar*, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89. We need not address both elements of the ineffective assistance test if the defendant fails to make a sufficient showing on one of them. *Dalton*, 383 Wis. 2d 147, ¶32.

¶21     "To demonstrate deficient performance, a defendant must show that counsel's representation fell below an objective standard of reasonableness considering all the circumstances." *Id.*, ¶34. "In evaluating counsel's performance, this court is highly deferential to counsel's strategic decisions." *Id.*, ¶35. We must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "Counsel's performance need not be perfect, or even very good, to be constitutionally adequate." *Dalton*, 383 Wis. 2d 147, ¶35.

¶22     "To prove prejudice, a defendant must establish that 'particular errors of counsel were unreasonable' and 'that they actually had an adverse effect on the defense.'" *Sholar*, 381 Wis. 2d 560, ¶33 (citation omitted). We evaluate whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶23 Schmidt first argues trial counsel was deficient for failing to object to the references to Alisa's letters. Although Schmidt seemingly acknowledges that experts are generally permitted to base their opinions on inadmissible evidence, including hearsay, *see* WIS. STAT. § 907.03, Schmidt argues that "[n]o reasonable psychologist would rely upon the unhinged rants of a jilted lover" and, as a result, counsel was deficient for failing to object to Allen's references to Alisa's letters.

¶24 We disagree. Allen testified that after he wrote his report, he became aware of Alisa's letters when reviewing Schmidt's updated treatment notes. He testified, "I read them in treatment notes. I don't actually view the letters." Allen was permitted to base his opinion that Schmidt was likely to reoffend on treatment notes and other evidence that would not be admissible at trial. *See* WIS. STAT. § 907.03. Allen discussed the letters in the way that they impacted his opinion of Schmidt's risk assessment. Schmidt's trial counsel was not deficient for failing to object to Allen's references to the communications between Schmidt and Alisa and how they impacted Allen's conclusions regarding Schmidt's future risk.

¶25 In any event, Schmidt is also unable to prove he was prejudiced by trial counsel's failure to object to Allen's testimony. The circuit court found that had counsel objected to the references to Alisa's letters, the court would have overruled the objection. *See State v. Jacobsen*, 2014 WI App 13, ¶49, 352 Wis. 2d 409, 842 N.W.2d 365. The result at trial would have therefore been the same. *See Strickland*, 466 U.S. at 694.

¶26 Alternatively, Schmidt argues that his trial counsel was ineffective for failing to attempt to introduce at trial the letters from Alisa. At the *Machner*

hearing, trial counsel testified he made the strategic decision not to introduce the other letters because he believed it would confuse the issue. Counsel wanted to focus the case on the fact that Allen's opinion was that Schmidt should be discharged. Counsel explained that he established through cross-examination that Schmidt and Alisa were still in a relationship. We agree with the circuit court that trial counsel pursued a reasonable trial strategy and therefore Schmidt cannot establish deficient performance. *See Dalton*, 383 Wis. 2d 147, ¶¶34-35.

¶27 Additionally, Schmidt cannot establish he was prejudiced by counsel's failure to attempt to introduce the letters at trial. At the *Machner* hearing, the circuit court reviewed the letters and stated the letters would not have changed any of the court's factual findings or its decision. *See Strickland*, 466 U.S. at 694.

¶28 Finally, Schmidt argues that the circuit court erroneously exercised its discretion at the *Machner* hearing by refusing to allow Alisa to testify by video conference. We review a circuit court's decision to admit evidence under an erroneous exercise of discretion standard. *State v. Mayo*, 2007 WI 78, ¶31, 301 Wis. 2d 642, 734 N.W.2d 115. We will sustain a circuit court's decision as long as it "examined the relevant facts, applied a proper legal standard, and reached a reasonable conclusion using a demonstrated rational process." *Id.*

¶29 "A *Machner* hearing is '[t]he evidentiary hearing to evaluate counsel's effectiveness, which includes counsel's testimony to explain his or her handling of the case.'" *State v. Jackson*, 2023 WI 3, ¶1 n.1, 405 Wis. 2d 458, 983 N.W.2d 608 (citation omitted). Here, Alisa's proffered testimony is irrelevant to Schmidt's current claims of ineffective assistance of trial counsel. The circuit court properly excluded her testimony from the *Machner* hearing.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.